UNITED STATES of America,
Plaintiff-Appellee,

v.

Harvey Edward WEST,
Defendant-Appellant.

No. 86–1499.

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1987.

Vicki Mandell-King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the briefs), for defendant-appellant.

John Green, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., and Ted Richardson, Assistant, on the brief), for plaintiff-appellee.

Before SEYMOUR, REINHARDT,\* and TACHA, Circuit Judges.

REINHARDT, Circuit Judge.

Appellant Harvey Edward West was convicted by a jury of committing first-degree murder in violation of 18 U.S.C. §§ 1111, 1151, and 1153.[1] He appeals from his conviction, alleging that the conviction was not supported by sufficient evidence and that the district court erred when it denied his request for a short continuance so that he could produce a defense witness. While we hold that the evidence was sufficient, we conclude that the district court abused its discretion in denying West's request for a continuance. Accordingly, we reverse the conviction and remand for a new trial.

## BACKGROUND: FACTS AND PROCEEDINGS BELOW

On August 31, 1985, West attended the Cache Jam concert, an annual event held on Indian trust land and produced by a local motorcycle club, the Clansmen. West was not a Clansmen member but was friendly with several members and attended Clansmen functions. Michael Feury, the victim,

---

\* Honorable Stephen R. Reinhardt, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing ... is murder in the first-degree.

Any other murder is murder in the second degree." 18 U.S.C. § 1111(a) (Supp.1985).

also attended the concert, as did Clansmen President Phillip "Bo" Glass, vice-president Virgil Paul Smith, and Smith's brother Don Hunsacker. Feury, a former probationary member of the Clansmen, had declined to join the club, and apparently angered its members by his decision. Shortly after Feury arrived, Glass and Smith confronted him and the three began fighting. During the fight Feury was struck from behind, in the back of the head; the blow knocked him unconscious and fractured his skull. He later died from his head injuries.

The prosecution presented three eyewitnesses who testified that it was West who struck the blow to Feury's head that knocked him to the ground. West's principal defense was that he did not strike Feury. The defense offered eyewitness testimony regarding Feury's fight with Smith and Glass, as well as testimony concerning prior Clansmen threats against the deceased. One witness testified that Clansmen told Feury to leave town and another admitted that he threatened to kill Feury. Mike Edwards, Feury's friend, testified that Feury told him he feared for his life. The defense also presented one witness, VanZant, who testified that Glass struck Feury during the fight, that Feury went down from Glass' blow, and that he did not get up. On cross-examination, however, VanZant changed his testimony, saying that he had only heard a loud noise, apparently a blow, and then observed Feury go down without actually seeing who struck him.

On the morning of January 14, the second day of the trial, after the defense had presented all of its available witnesses, West moved for a brief continuance, until the next day, to produce a final witness, Mark Phariss. The defense expected that Phariss would testify that it was Glass rather than West who struck Feury and knocked him down. West had subpoenaed Phariss and orally informed him that he would be needed on January 14. The subpoena itself, however, ordered Phariss to appear the following day, January 15. The court recessed for a brief period and defense counsel attempted to contact Phariss by telephone but could not. The court then

denied West's motion for a continuance until the next day and proceeded with closing argument and jury instructions. The jury convicted West and the court sentenced him to life imprisonment. This appeal followed.

## DISCUSSION

West challenges his conviction on two grounds: that it was not supported by sufficient evidence, and that the district court erred in denying him a continuance.

■ There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Hooks*, 780 F.2d 1526, 1530–31 (10th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). At trial, three eyewitnesses testified that they saw West strike the victim in the head with a long stick, and that Feury collapsed from the blow. Further, a medical expert testified that a blow to the head caused the victim's death. A reasonable jury could have accepted this evidence and concluded beyond a reasonable doubt that West intentionally killed Feury. Thus, the jury's finding that West was guilty of murder was supported by sufficient evidence.

■ We are required, nevertheless, to reverse West's conviction because the district court's denial of a continuance deprived him of the opportunity to obtain the testimony of a key defense witness.

We review the district court's decision to deny a continuance for abuse of discretion and do not reverse unless we conclude that the denial was arbitrary or unreasonable and materially prejudiced the appellant. *See United States v. Bradshaw*, 787 F.2d 1385, 1392 (10th Cir.1986); *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985). The determination whether "the denial of a continuance constitutes an abuse of discretion turns largely upon the circumstances

of the individual case," *United States v. Flynt,* 756 F.2d at 1359. There is no mechanical test by which to measure the district court's decision. *See id.*

To determine whether a denial of a continuance is arbitrary or unreasonable, we look to several factors, including: the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance. *See United States v. Bradshaw,* 787 F.2d at 1392; *United States v. Flynt,* 756 F.2d at 1358–59; *see also United States v. Lee,* 729 F.2d 1142, 1144 (8th Cir.1984). No single factor is determinative and the weight given to any one may vary depending on the extent of the appellant's showing on the others.

**1. Diligence**

When West sought the continuance, he had formally subpoenaed Phariss for what was anticipated to be the third day of the murder trial, but had told him to appear a day early. Upon Phariss' failure to appear on the second day of the trial, counsel made an unsuccessful effort to contact him. Counsel's failure to include the proper date on the subpoena was, if anything, a minor error that does not demonstrate a lack of diligence. *Compare United States v. Siegel,* 587 F.2d 721, 728 (5th Cir.1979) (appellant failed to subpoena witness and thus lacked diligence).

**2. Usefulness of the Continuance**

Because Phariss presumably knew that he was supposed to appear on January 14, his failure to do so could have resulted from a desire to avoid testifying. However, Phariss also could have been confused by the discrepancy between the formal subpoena, which ordered his appearance on January 15, and the oral instruc-

tion from West's attorney, to appear on January 14. Thus, at the time the continuance was denied, a reasonable possibility existed that Phariss would voluntarily appear the following day. *See United States v. Barrett,* 703 F.2d 1076, 1081 (9th Cir. 1983) (defendant probably could have obtained a photographic expert to assist him in his defense had a continuance been granted); *and compare United States v. Smith,* 788 F.2d 663, 669 (10th Cir.1986) (witness was unidentified and it was unlikely that he or she would ever be found); *United States v. Bradshaw,* 787 F.2d at 1392 (appellant was unsure whether records could be obtained). Here, the continuance would have served a useful purpose because of the possibility that Phariss was confused as to the date he was to appear in court.

**3. Inconvenience**

There is nothing in the record that suggests that a continuance of the trial until the next morning would have seriously inconvenienced the government or the jury. *Compare United States v. Bradshaw,* 787 F.2d at 1392 (two week delay). Nor is there any indication that the half-day delay would have necessitated the recalendaring of other matters, or otherwise have caused any significant inconvenience to the court. *See United States v. Flynt,* 756 F.2d at 1360. In the absence of a contrary statement in the record, we may presume that no significant inconvenience will result from a brief delay.

**4. Need and Prejudice**

Phariss' anticipated testimony was of great importance to West's defense. West was on trial for first-degree murder, and faced life imprisonment if convicted. If Phariss had testified as expected, it is possible that West would have been found not guilty. West's primary defense to the murder charge was that he did not strike Feury and was therefore innocent. Phariss' anticipated testimony that Glass struck

the fatal blow was thus crucial.[2] The court's denial of a continuance resulted in the exclusion of potentially favorable testimony important to West's defense and materially prejudiced him. *See United States v. Fessel*, 531 F.2d 1275, 1280 (5th Cir. 1976); *and compare United States v. Siegel*, 587 F.2d at 728 (no material prejudice where defendant failed to show that substantial favorable testimony would be elicited from witness).[3]

\* \* \* \* \* \*

As we stated earlier, there is no mechanical test to determine when the denial of a continuance warrants reversal. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964). By far the most important factor to consider, however, is the defendant's need for a continuance and the prejudice resulting from its denial. In this case, the fact that the denial of a continuance precluded the defense from attempting to obtain the presence at trial of the only eyewitness who might have presented directly exculpatory testimony, warrants reversal regardless of appellant's showing on the other factors. The testimony was important and the prejudice resulting from the denial of a continuance was severe.

We note for the record that the remaining factors generally militate in West's favor as well. First, West attempted in good faith to ensure that Phariss would be present in court at the appropriate time. Second, in light of the discrepancy between the formal subpoena and the defense's oral instructions to Phariss, there was a reasonable possibility that Phariss would appear the next day. Third, the record reveals little, if any, inconvenience that would have resulted from the continuance.

We hold that the district court abused its discretion in denying the requested continuance. Accordingly, we reverse West's conviction of first-degree murder and remand for a new trial.

REVERSED AND REMANDED.

2. Counsel made an offer of proof as follows:

    **Mr. Soltis (Defense Counsel):** Your, Honor, we're going to have two witnesses; one is going to testify that Harvey West did not hit him, but someone else did.

    **The Court:** Who's that witness?

    **Mr. Soltis:** That will be Mark Phariss.

    **The Court:** He will testify that he observed the scene at the time that he was hit and that he observed someone else do it.

    **Mr. Soltis:** Yes.

    **The Court:** Does he identify that person?

    **Mr. Soltis:** Yes, Your Honor.

    **The Court:** Who is that person?

    **Mr. Soltis:** Bo Glass.

3. We note also that Phariss' testimony was not cumulative. Although another witness, Van-Zant, originally had testified similarly, he recanted on cross-examination, admitting that he did not see the blow that knocked Feury to the ground.