UNITED STATES of America, Plaintiff–Appellee,

v.

James WYNNE, Defendant–Appellant.

No. 92–2100.

United States Court of Appeals, Tenth Circuit.

May 18, 1993.

Don J. Svet, U.S. Atty., and David N. Williams, Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee.

Daniel J. Tallon, Albuquerque, NM, for defendant-appellant.

Before McKAY, Chief Judge, MOORE, and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

James Wynne appeals his conviction, following a jury trial, for possession with intent to distribute more than 100 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). Agent Samuel Candelaria, a detective in the Albuquerque Police Department under assignment to the federal Drug Enforcement Administration Task Force, discovered the methamphetamine during a regular forty-five minute stop of an Amtrak passenger train at the Albuquerque train station. Mr. Wynne was a passenger on the train, and Agent Candelaria was conducting a routine monitoring of the train during its stop. On appeal, Mr. Wynne contends that: (1) the district court erred in denying his motion to suppress statements he made prior to his arrest; (2) he was denied effective assistance of counsel; (3) the government failed to disclose the identity of an alleged informant prior to trial, resulting in a denial of due process; (4) the district court abused its discretion by denying Mr. Wynne's two motions to continue the trial date; and (5) the foregoing, taken together, amounted to cumulative error resulting in a denial of due process, or, in the alternative, his trial was fundamentally unfair. We affirm.

I.

BACKGROUND

On the day of the events in question, Mr. Wynne was a passenger on the eastbound Amtrak train from southern California to Kansas City. At its regularly scheduled, forty-five minute stop in Albuquerque, he got off the train carrying a small duffle and walked to a corner of the parking lot with another passenger. From a distance Agent Candelaria observed Mr. Wynne and his fellow passenger smoking what appeared to be a marijuana cigarette. While walking over to speak with Mr. Wynne, Agent Candelaria walked past another passenger, Moshe Ben Amram, and smelled a strong odor of burnt marijuana. He stopped and asked to see Mr. Amram's ticket and identification. These documents were on board the train, so both Mr. Amram and Agent Candelaria reboarded the train and went to Mr. Amram's seat in the coach car. Once there, Agent Candelaria confiscated a small baggie of loose marijuana from Mr. Amram, but did not arrest him. Agent Candelaria exited the train, placed the confiscated marijuana in the trunk of his patrol car, told a border patrol agent on duty at the station about Mr. Amram, who appeared to be a foreign national, and returned to the train.

While Agent Candelaria was occupied with Mr. Amram, Mr. Wynne approached a vending truck which serviced the Amtrak station in Albuquerque during regular stops of passenger trains. The truck was operated by Jean Narro. Mr. Wynne spoke to Ms. Narro and looked over the food she offered for sale before he returned to the train. She noticed that he smelled strongly of marijuana and that he was carrying a duffle. Mr. Wynne remarked to her that he did not need to buy

candy because he had a lot of candy in his duffle bag.

Mr. Wynne reboarded the train's coach car during the time Agent Candelaria was confiscating the baggie of marijuana from Mr. Amram. As he passed Agent Candelaria in the aisle, Mr. Wynne pointed to the baggie of marijuana being confiscated and said, "Let's roll a big one." Agent Candelaria noted where Mr. Wynne was sitting in the coach car, but did not otherwise communicate with him at that time.

Agent Candelaria returned to the coach car after storing Mr. Amram's marijuana in his car, and approached Mr. Wynne. He identified himself as a police officer, requested Mr. Wynne's ticket and identification, and asked him about his itinerary. After Agent Candelaria returned the ticket and identification to Mr. Wynne, he asked if Mr. Wynne would voluntarily consent to a search of his luggage. Mr. Wynne stood and retrieved from a luggage rack over his seat first a suitcase and then the duffle he had been carrying. The duffle contained a large bag of candy and a gift wrapped box. Mr. Wynne claimed that the box contained beach sand as a gift for his nephew. Agent Candelaria asked if he would submit the box to a dog "sniff," and Mr. Wynne consented. Agent Candelaria took the box to the baggage storage section in another area of the train and summoned a police dog handler and trained dog who were at the station as part of the regular patrol. Mr. Wynne was left at his seat, alone and under no verbal or physical restraint. The dog alerted to the box.

Agent Candelaria, followed by the border patrol agent who had been talking with Mr. Amram, reapproached Mr. Wynne and told him that the dog had alerted to the box and again asked him what was in the box. Mr. Wynne repeated that it was sand. The agent asked if he would voluntarily consent to open the box, and Wynne refused. He then threw up his arms nervously and said, "Okay. What do we do now? Go ahead and take me to jail."

In response, Agent Candelaria told him that nothing was going to happen to him at

that point, that Agent Candelaria would retain the box, seek a search warrant, and if the box did not contain drugs, it would be sent to Mr. Wynne at his destination. The border patrol agent wrote down the address from Mr. Wynne's driver's license, and returned the license to him. Agent Candelaria and the boarder patrol agent departed from the train, leaving Mr. Wynne on the train to continue on his scheduled journey. Thus, at no time was Mr. Wynne under any actual restraint. When the search under warrant revealed methamphetamine, Agent Candelaria contacted the New Mexico Highway Patrol in Raton, New Mexico, and Mr. Wynne was arrested by highway patrol officers during a scheduled stop of the train in Raton.

## II.

### MOTION TO SUPPRESS

In the proceedings below, Mr. Wynne took the position that he did not own and had no connection with the box containing methamphetamine or the duffle bag in which the box was stored. Accordingly, he raised no Fourth Amendment challenge on the question of consent which Agent Candelaria testified Mr. Wynne gave to the search. That matter is the subject of an ineffective assistance of counsel claim, discussed in section III below.

Mr. Wynne did, however, file a motion to suppress based on Fifth Amendment grounds. His contention below,[1] and here, is that his privilege against compelled self-incrimination guaranteed by the Fifth Amendment was violated when Agent Candelaria asked him questions without first advising him of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This contention rests upon the premise that Agent Candelaria had probable cause to arrest Mr. Wynne, and had formed the subjective intention to do so, either at the point of their first encounter (after the agent had seen Mr. Wynne smoke what the agent believed to be a marijuana cigarette and heard him say "Let's roll a big one"), or after the narcotics dog reacted posi-

---

1. Motion to Suppress Statements, R. Vol. I, Tab 17.

tively to the box which had been taken from Mr. Wynne's duffle bag. Mr. Wynne pursues three separate possibilities from this premise: (1) he was functionally in custody and subjected to custodial interrogation because the agent had probable cause and the subjective intent to arrest Wynne; (2) he was actually in custody due to the allegedly intimidating nature, accusatory focus, and tone of Agent Candelaria's actions and questions; or (3) Agent Candelaria, having probable cause to arrest, intentionally delayed arresting Mr. Wynne in order to subject him to intimidating or deceitful interrogation designed to elicit incriminating statements.

The district court held an evidentiary hearing on the motion to suppress. Agent Candelaria testified for the government and was cross-examined by Wynne's counsel. Counsel for both sides argued their positions, after which the court denied the motion, stating: "He [Wynne] was never arrested. He was never in custody. He did not have to have *Miranda* warnings. What he said was simply a volunteer statement." R. Vol. II at 73.

■ We review the district court's findings of fact under the clearly erroneous standard, but we apply a *de novo* standard of review to the ultimate question of constitutional law. *See United States v. Thody*, 978 F.2d 625, 628–29 (10th Cir.1992); *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). Where a defendant appeals the denial of a motion to suppress, "we review the evidence in the light most favorable to the Government." *Short*, 947 F.2d at 1449.

■ We agree with the district court that Wynne's arguments are meritless. Observing Mr. Wynne at a distance smoking what Agent Candelaria believed to be a marijuana cigarette, plus Wynne's purely volunteer statement about rolling a big one, hardly furnished probable cause for arrest. Regardless, whatever "accusatory" or other focus may have existed regarding Mr. Wynne, and whatever Agent Candelaria's "subjective intention" was are irrelevant.[2] A person is

not placed in the functional equivalent of custody for *Miranda* purposes simply because that person is the focus of a criminal investigation and is being questioned by authorities. *Beckwith v. United States*, 425 U.S. 341, 346–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976).

> " 'It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the court to impose the *Miranda* requirements with regard to custodial questioning.' "

*Id.* at 346–47, 96 S.Ct. at 1616 (quoting *United States v. Caiello*, 420 F.2d 471, 473 (2d Cir.1969), *cert. denied,* 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 650 (1970)); *United States v. Chalan*, 812 F.2d 1302, 1306 (10th Cir.1987). And, in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court stated: "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442, 104 S.Ct. at 3151; *see also United States v. Ward*, 961 F.2d 1526, 1530 (10th Cir.1992).

■ Applying the relevant test, we conclude that no reasonable man in Mr. Wynne's position could have viewed Agent Candelaria's encounter and questions as a curtailment of his freedom of action to a "degree associated with formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam), *quoted in Berkemer v. McCarty*, 468 U.S. at 440, 104 S.Ct. at 3150; *United States v. Jones*, 933 F.2d 807, 810 (10th Cir.1991). Neither the surroundings nor the questions put to Mr. Wynne were custodial in nature. The agent said nothing to Mr. Wynne which would suggest that he was in custody; and, certainly, he was under no physical restraint. The agent's brief and entirely routine questioning took place in a public coach car in front of other passengers. The agent was in civilian clothes and did not display a weapon.

---

**2.** The record shows that the agent did not believe he had probable cause to arrest and had no intention to arrest Wynne; but the point is unimportant, as indicated above.

When he asked for consent to search ·he "asked Mr. Wynne if he would *voluntarily* consent for me to search his luggage, and he consented to the search." R. Vol. II at 12–13 (emphasis added); *see also* R. Vol. III at 37. Thereafter, Wynne felt free to refuse consent to open the box.

During the time Agent Candelaria was subjecting the box containing methamphetamine to a trained dog "sniff," Mr. Wynne was left alone in his coach seat on the train, under no verbal or physical constraint. When Agent Candelaria informed Mr. Wynne that the dog had alerted to the box, he also told him that he was not under arrest; and, Mr. Wynne was permitted to continue his journey on the train.[3]

Finally, the record in this case in no way supports Mr. Wynne's suggestion that pretext, deception or other improper conduct were employed by the agent to induce Mr. Wynne to make damaging admissions. The encounter and ensuing questions were entirely proper and routine, both in duration and in content. Agent Candelaria was entitled to proceed cautiously prior to making or authorizing an arrest, and we reject Mr. Wynne's suggestion that the agent should have placed him under arrest sooner. "There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect...." *Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966) (footnote omitted).

In sum, there is no error in the district court's findings of fact or conclusion that Mr. Wynne's Fifth Amendment rights were not violated. Accordingly, the motion to suppress was properly denied.

### III.

### INEFFECTIVE ASSISTANCE

Mr. Wynne argues next that his counsel's representation fell below constitutional standards for six reasons: (1) failure to file a motion to suppress physical evidence, on Fourth Amendment grounds, on the basis of lack of or invalid consent to search; (2) failure to conduct pretrial identification and interview with government witness Jean Narro; (3) ineffective cross-examination of Ms. Narro at trial, and failure to attempt to limit or exclude Ms. Narro's testimony or to request a recess or continuance to allow for preparation to cross-examine her; (4) counsel's unsuccessful efforts to obtain independent testing of the drugs found in Wynne's possession and offered in evidence by the government at trial; (5) failure to secure an expert to testify regarding Mr. Wynne's post-arrest urinalyses; and, (6) inadequate trial preparation due to the fact that Mr. Wynne resided in another state, California, during the pretrial period, and because of the short period of time, sixty days, between his arraignment and trial.

These objections were not raised in the trial court. If a claim of ineffective assistance is not raised in the trial court, such claim will not be resolved on direct

---

3. Both Wynne and the government devote substantial argument to Fourth Amendment search and seizure cases. They are of little assistance. For instance, an ordinary traffic stop and questioning, although constituting a seizure for Fourth Amendment purposes, does not involve custody for purposes of *Miranda. Pennsylvania v. Bruder,* 488 U.S. 9, 10–11, 109 S.Ct. 205, 206–07, 102 L.Ed.2d 172 (1988); *United States v. Dewitt,* 946 F.2d 1497, 1501–02 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). *See* 3 Wayne R. LaFave, *Search and Seizure* § 9.2(h) at 403 n. 200 (" '[C]ustody' for *Miranda* purposes may be a different question than that of what is a 'seizure' for Fourth Amendment purposes."). However, were we conducting a Fourth Amendment analysis of this encounter, we would be obliged to conclude that Mr. Wynne was not even seized,

much less in custody. *See Florida v. Bostick,* — U.S. —, —, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). The test for that analysis is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.,* — U.S. at —, 111 S.Ct. at 2387; *see also United States v. Ward,* 961 F.2d 1526, 1530 (10th Cir.1992). On the record before us, we have no trouble concluding that a reasonable person in Mr. Wynne's situation would have felt free to decline the agent's requests or otherwise terminate the encounter. Indeed, as mentioned above, Mr. Wynne in fact *did* decline to give consent for the agent to open the box found in the duffle bag. And, as with Fifth Amendment analysis, the mere existence of an articulable suspicion in the mind of an officer, without more, would not transform a consensual encounter into an investigative detention.

appeal, except in the rare case in which the record is sufficiently complete for effective appellate review. *Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991). In *Beaulieu,* the court gave several examples of allegations of ineffective assistance of counsel which "cannot be determined on the basis of the trial record alone." *Id.* at 808. These include allegations that "trial counsel failed to interview or call certain witnesses" and "made critical evidentiary mistakes, including an alleged failure to file a motion to suppress," *id.,* allegations which Wynne raises here.[4]

Because of the nature of these allegations and the lack of an adequate record upon which this court could make a determination with respect to them, we decline to address the ineffective assistance claims in this direct appeal, *see Beaulieu,* 930 F.2d at 805 n. 2, and dismiss the appeal as to this issue only, without prejudice to its examination on collateral proceedings under 28 U.S.C. § 2255.[5]

## IV.

## DISCLOSURE OF WITNESS'S IDENTITY

■ Mr. Wynne describes a government witness, Jean Narro, as a government informer, whose identity should have been disclosed before trial under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We review this claim for plain error because Mr. Wynne did not raise it in the district court. *United States v. Bowser,* 941 F.2d 1019, 1021 (10th Cir.1991). "Plain errors are those errors that when viewed against the entire record ' "seriously affect the fairness, integrity or public reputation of judicial proceedings." ' " *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citation omitted)).

The government contends that Ms. Narro was merely a bystander to the events which occurred on the train platform, and was at most a mere tipster. We agree that Ms. Narro was not a government informant whose identity should have been disclosed. She was a "citizen-informer." *See* 1 Wayne R. LaFave, *Search and Seizure* § 3.3 at 611 ("[C]ourts have quite properly drawn a distinction between [the usual concept of a police informant] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty."). Ms. Narro testified at trial, subject to cross-examination. There was no evidence presented at trial that she had been contacted or employed in any way by the government prior to the circumstances which lead to Mr. Wynne's arrest. The testimony indicates nothing other than that the information she gave about Wynne was given out of civic duty.

Moreover, even if she *were* characterized as a government informant, the government had no duty to disclose Ms. Narro's identity under *Roviaro* because she was not a participant in the charged offense, and her testimo-

---

4. Although Wynne claims that unless we hear this claim on direct appeal he will be foreclosed from bringing the issue on collateral proceedings under 28 U.S.C. § 2255, *Beaulieu* states that "this bar applies to only a narrow subcategory of ineffective assistance of counsel claims: situations where the defendant is no longer represented by trial counsel and it is evident that resolution of the ineffectiveness claim would not be substantially aided by further development of the record." *Beaulieu,* 930 F.2d at 807.

Counsel for Mr. Wynne on appeal, who also represented Mr. Wynne in the district court, submitted a motion to withdraw as counsel on appeal to this court after he had submitted Wynne's Appellant's Brief. Counsel based his request for withdrawal on a potential conflict of interest in light of Mr. Wynne's claims of ineffective assistance of trial counsel. However, as set forth

above, we have declined to review Mr. Wynne's claims of ineffective assistance of counsel because the record is insufficiently developed for our analysis of the claims. The motion to withdraw as counsel on appeal is DENIED. This denial is only for purposes of the present appeal, and does not oblige counsel to represent Mr. Wynne in subsequent proceedings under 28 U.S.C. § 2255, or otherwise.

5. As we understand the ineffectiveness arguments raised by Mr. Wynne, nothing in this opinion addresses them. However, to the extent any such argument is controlled by this opinion, we consider the record to have been adequate for the purpose and counsel to have been effective in relation to the point since all issues addressed herein have been resolved against Mr. Wynne's contentions.

ny at trial was cumulative to that of Agent Candelaria. *See United States v. Mendoza–Salgado,* 964 F.2d 993, 1000–01 (10th Cir. 1992).

## V.

## DENIAL OF CONTINUANCES

Mr. Wynne filed two motions to continue the trial date for the following reasons: (a) to locate an expert witness to testify that Mr. Wynne's "clean" urinalysis twenty-two days after his arrest implied that he had not been smoking marijuana in the train station parking lot; (b) to conduct pretrial investigation of a magazine mailing label with the name "J. Wynne," which was apparently found in the duffle containing the drugs; and (c) to obtain independent verification of the quantity and composition of the physical evidence that the government claimed consisted of 890 grams of methamphetamine.

 The district court denied both motions. R. Vol. I tabs 27, 41. Mr. Wynne contends that "review of the record shows actual prejudice in that the denial of the continuance had a significant adverse impact on counsel's performance at trial and deprived Appellant of effective assistance of counsel and a fair trial." Appellant's Brief at 34. We review the denial of a motion to continue under an abuse of discretion standard, *United States v. Rivera,* 900 F.2d 1462, 1475 (10th Cir.1990), and will find error only if the denial was " 'arbitrary or unreasonable and materially prejudiced the [defendant].' " *Id.* (quoting *United States v. West,* 828 F.2d 1468, 1469 (10th Cir.1987)).

> Whether a denial of a motion for a continuance is arbitrary or unreasonable depends upon an examination of a number of factors, including:
>
> [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*Rivera,* 900 F.2d at 1475 (quoting *West,* 828 F.2d at 1470).

 Upon examination of the record in light of these factors, we conclude that the denials of Mr. Wynne's motions were neither unreasonable nor arbitrary and that no material prejudice resulted. Mr. Wynne's conviction did not hinge on whether or not he was smoking marijuana in the station's parking lot; the mailing label in question was not introduced at trial, nor was any testimony introduced relating to the label; and Mr. Wynne raised no objection to the identification of the type or quantity of the drug named in the indictment, at trial, or by post-trial motion. On the other hand, the evidence of guilt was overwhelming. Agent Candelaria testified that he saw Mr. Wynne carrying the duffle on the train station's platform and in the parking lot, R. Vol. III at 23, 32; saw him carry the duffle back onto the train, *id.* at 32; and saw him place the duffle in the luggage rack over his seat. *Id.* Agent Candelaria testified that Mr. Wynne pointed to the duffle when asked if he had any luggage, *id.* at 36; gave his consent when Agent Candelaria asked if he would voluntarily consent to a search of the duffle, *id.* at 37; and lifted the bag down from the rack, saying "All I have in here is candy." *Id.* Agent Candelaria testified that the duffle did contain candy, as well as a gift-wrapped box. *Id.* at 38. Agent Candelaria testified that the box, opened later under warrant, contained a substance which field-tested positive for methamphetamine. *Id.* at 43–44. The federal Drug Enforcement Administration chemist who tested the methamphetamine from the box testified that it was 85% pure, *id.* at 108, and that it weighed 890 grams, *id.* at 112. The district court did not abuse its discretion in denying Mr. Wynne's motions to continue.

## VI.

## DUE PROCESS

 Mr. Wynne's final claim is that he was denied a fair trial and due process of law because of "cumulative error or fundamental

fairness analysis." Appellant's Brief at 35. However, "a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *Rivera,* 900 F.2d at 1471. We have already found no error by the district court in this case. Mr. Wynne's cumulative error claim is thus without foundation.

Mr. Wynne's claim of a fundamentally unfair trial is also without merit. This circuit's analysis in *Rivera* is directly applicable to the case before us:

> We need not explore in this case the outer parameters of when prejudicial circumstances, which do not individually constitute error, might contribute to or cause a finding of fundamental unfairness because it is clear in this case that the defendant was not subjected to a fundamentally unfair trial.... "Courts should tread gingerly when faced with arguments" concerning "the 'fundamental fairness' component of the Fifth Amendment's Due Process Clause," which should be reserved for "the most serious cases, which truly shock the conscience as well as the mind."

*Rivera,* 900 F.2d at 1477 (quoting *United States v. Penn,* 647 F.2d 876, 880 (9th Cir.) (en banc), *cert. denied,* 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980)).

The motion of Mr. Wynne's counsel to withdraw is DENIED as to this appeal. Mr. Wynne's claim of ineffective assistance of counsel is DISMISSED, without prejudice to renewal in a collateral proceeding. The district court's denial of the Motion to Suppress is AFFIRMED, and the conviction is AFFIRMED.