**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JASON CLAUDE GIANETTA, a/k/a
John Abel Garcia,

    Defendant-Appellant.

No. 96-1434
(D.C. No. 95-CR-318-M)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

George E. Gill (Henry L. Solano, United States Attorney, with him on the brief),
Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Robert Ukeiley, Boulder, Colorado, for Defendant-Appellant.

---

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.

---

Jason Gianetta appeals his conviction for bank robbery. Pursuant to 28
U.S.C. § 1291, this court exercises jurisdiction and affirms.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On August 28, 1995, a man entered a Key Bank in Denver and, displaying a gun, demanded money from one of the tellers.  The teller handed over approximately $6,000 in cash, including "bait money," several identifiable fifty dollar bills.  Another teller, David Dunki, saw the robber run out the bank's front door, and watched through the windows as he ran around toward the rear of the building.  Mr. Dunki then ran out a rear door and began to chase the robber.  Within a minute, Mr. Dunki caught up with the robber and pinned him to the ground.  He held the man there until the police arrived.  A customer, who happened to be driving by, noticed the chase and assisted Mr. Dunki in detaining the robber.  The man the police took into custody was Mr. Gianetta.

Mr. Gianetta was indicted on one count of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d).  In court, he represented himself.  At a pre-trial hearing, he told the court the theory of his defense would be that he was framed by the Federal Bureau of Investigation ("Bureau").  He claimed the Bureau was seeking revenge because he had refused to assist in an investigation.  Mr. Gianetta had previously assisted the Bureau in another investigation and believed the details of his assistance to be relevant to his defense.  The district court reviewed, *in camera*, a number of documents relating to Mr. Gianetta's relationship with the Bureau and determined they had no relevance to his defense

on the bank robbery charge.

At trial, the teller who handed over the money identified Mr. Gianetta as the robber. Mr. Dunki identified Mr. Gianetta as the man he chased and held for the police. Also, the customer identified Mr. Gianetta as the man he helped restrain. Evidence was presented showing that the police recovered a BB gun and the bank's money, including the bait bills, from Mr. Gianetta's waist band and pockets.

On appeal, Mr. Gianetta raises five issues: (1) whether the district court erred in denying a continuance to allow Mr. Gianetta to locate a witness; (2) whether the court erred in denying Mr. Gianetta's request for scientific testing of the shirt worn in the robbery; (3) whether the court erred in preventing Mr. Gianetta from calling a witness to testify about his fighting ability; (4) whether the court denied Mr. Gianetta the right to testify on his own behalf; and (5) whether the court denied Mr. Gianetta his Sixth Amendment right to present his own case. We consider each in turn.

First, Mr. Gianetta contends the district court erred by refusing to grant him a continuance during the trial to allow him to locate Michelle Gutierrez, a woman

who apparently made two 911 calls concerning the bank robbery. In one of the calls, the woman described the robber as wearing a red cap. Mr. Gianetta was not wearing a red cap at the time of his arrest and consequently believed her testimony might be exculpatory. Upon determining normal investigative procedures had already been used in trying to find the woman, the court denied the motion for a continuance. We review such decisions under an abuse of discretion standard and do not reverse unless the denial "was arbitrary or unreasonable and materially prejudiced the appellant." *United States v. West*, 828 F.2d 1468, 1469 (10th Cir. 1987).

> To determine whether a denial of a continuance is arbitrary or unreasonable, we look to several factors, including: [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*Id.* at 1470.

An analysis of these factors supports the district court's decision. Mr. Gianetta was aware of this potential witness' existence at least as early as March 13, 1996, almost three months before his trial. However, he apparently attempted

only once to meet with an investigator to locate the witness. That meeting did not occur because of factors outside of Mr. Gianetta's control. Of course, it is unfortunate he was unable to meet with the investigator, but a single failed attempt at a meeting is hardly a conclusive showing of diligence, as Mr. Gianetta suggests. Mr. Gianetta also made no showing that the continuance, if granted, would allow him to locate the witness. His investigator had already used normal investigative procedures in attempting to locate her and had failed. Mr. Gianetta did not even know for sure where this woman lived. There were no assurances that a continuance of a reasonable amount of time would have been productive.

Furthermore, it is doubtful whether this potential witness would have been of any value to Mr. Gianetta. [1] The witness was a tenant of an apartment building near where Mr. Gianetta was caught. She apparently saw the incident in the street and called the Denver Police Department. There is no question that Mr. Gianetta was the man apprehended on the street, regardless of the color of his hat. The potential witness was not in the bank, so she would have nothing to offer concerning whether Mr. Gianetta was the actual bank robber. Overall, Mr. Gianetta failed to make a convincing case that this potential witness would have

---

[1] It is even unclear whether the woman Mr. Gianetta was attempting to contact was the caller who made the remark about the red cap.

anything material to offer and as a result he appears to have suffered little or no harm by the court's denial of the continuance.

Mr. Gianetta argues his case is "almost exactly the same as the *West* case." This is not so. The *West* case involved a critical witness who had been subpoenaed to appear on one date and then had been asked to appear on an earlier date. *West*, 828 F.2d at 1469-71. This court ruled that a continuance should have been granted when the witness did not show up to testify on the earlier date, in order to clear up any confusion that may have been caused by the conflicting dates. *Id.* at 1471. In *West*, the witness had been located, interviewed, and subpoenaed, and the defendant made an offer of proof that included highly relevant information, whereas in this case the witness had not been located, and therefore had not been interviewed or subpoenaed, and the defendant's offer of proof did not include any material information.

The district court acted well within its discretion in denying Mr. Gianetta's motion for a continuance.

Second, Mr. Gianetta argues the district court erred in denying his request to have scientific tests conducted on the shirt worn by the bank robber. Prior to

trial, Mr. Gianetta requested to have a shirt recovered at the scene of his arrest tested for DNA and hair samples. He believed such a test would show the shirt was not his, which in turn would support his claim that he was framed. The court denied his request for lack of relevance and because waiting for the results of such a test would cause a delay. This court reviews such a decision for abuse of discretion. *See United States v. Nichols*, 21 F.3d 1016, 1017 (10th Cir.) (concerning expert witnesses), *cert. denied*, 513 U.S. 1005 (1994).

The Fifth Amendment guarantees indigent defendants "a fair opportunity to present their defense at trial." *United States v. Kennedy*, 64 F.3d 1465, 1473 (10th Cir. 1995) (citing *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985)). This entitles indigent defendants, however, to receive only the basic and integral tools. *Id.* They do not have a right to everything a wealthier defendant might opt for in a similar situation. *Id.* There are three factors to weigh in determining if a certain resource is a basic tool: "(1) the effect on [the defendant's] private interest in the accuracy of the trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if such assistance is not offered." *Id.* The defendant has the burden of showing the necessity of the tool. *See United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986) (discussing

-7-

request for expert under 18 U.S.C. § 3006A(e)(1)), *cert. denied*, 480 U.S. 908 (1987).

In this case, the third factor is dispositive because Mr. Gianetta has not demonstrated that testing of the shirt would have any value whatsoever. Supposedly, a test of the shirt would reveal Mr. Gianetta has never worn it. However, Mr. Gianetta told the court the shirt was placed on him after his arrest. Therefore, it simply makes no sense to test the shirt — the findings would have no real probative value, no matter what the result ( *i.e.*, he had the shirt on at one point, so a positive result is easily explained and a negative result is error). The district court did not abuse its discretion in denying Mr. Gianetta's request for this test.

Third, Mr. Gianetta argues that the court improperly denied his request to present testimony from a prison guard concerning his superior fighting ability. He believes testimony from the guard about his fighting ability would have helped disprove the government's evidence that he was captured by two unarmed men. The district court denied his request to present the witness, finding such evidence would not be relevant. Deciding "whether certain testimony is relevant to an issue before the jury is within the sound discretion of the district court." *United*

*States v. Neighbors*, 23 F.3d 306, 310 (10th Cir. 1994). This court reviews evidentiary rulings for abuse of discretion. *See United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir. 1988).

The central question in this case is whether Mr. Gianetta, the man held by two civilians until he was taken into custody by the police, was the same man who robbed the bank. The government had eyewitness testimony and physical evidence to show that he was, in fact, the robber. The proffered testimony regarding Mr. Gianetta's fighting ability was irrelevant to answering this central question. Indeed, the use of circumstantial character or trait evidence often raises questions of relevancy. *See United States v. Troutman*, 814 F.2d 1428, 1454 (10th Cir. 1987) (quoting Fed. R. Evid. 404(a)(1) Advisory Committee Notes).

Mr. Gianetta cites a First Circuit case, *Pettijohn v. Hall*, 599 F.2d 476 (1st Cir.), *cert. denied*, 444 U.S. 946 (1979), in support of his argument. That case, however, is inapposite. *Pettijohn* involved a defendant seeking to call an eyewitness to a robbery to testify about how the witness had identified another man as the culprit in a police photo line-up. *Id.* at 477-80. The trial court did not let him call the witness. The First Circuit reversed, finding the proffered testimony to be "clearly relevant" to establish a "direct defense" that another man

committed the crime. *Id.* at 480. In contrast, Mr. Gianetta was asking to call a witness who had no information to offer whatsoever about the crime for which he was on trial. The prison guard's testimony simply would not have established a direct defense for Mr. Gianetta and would have added little more than Mr. Gianetta could have offered during his own testimony.

The district court acted within its discretion in denying Mr. Gianetta's request to have the prison guard testify.

Fourth, Mr. Gianetta argues the district court violated his Sixth Amendment right to testify on his own behalf. Mr. Gianetta's proposed theory of his case was that the Bureau framed him for the bank robbery in revenge for his refusal to assist in an investigation. The district court reviewed, *in camera*, documents concerning Mr. Gianetta's relationship with the Bureau and determined it had no relevance to his defense on the bank robbery charge because he could make no connection between the two.

Mr. Gianetta mentioned his past relationship with the Bureau in his opening statement, but he did not mention it again during his own testimony. When his advisory counsel suggested, at the conclusion of Mr. Gianetta's testimony, that he

might want to discuss his earlier relationship with the Bureau, he declined to offer any more testimony (perhaps because before trial the court had admonished him to avoid the topic).

The district court did not prevent Mr. Gianetta from testifying on his own behalf, as he suggests. The court merely attempted to keep the content of his testimony within the bounds of allowable evidence. The Sixth Amendment does not grant defendants an unlimited right to present evidence; it only protects defendants' rights to offer relevant and material evidence. *See Washington v. Texas*, 388 U.S. 14, 23 (1967) (discussing right to compulsory process for obtaining witnesses under the Sixth Amendment); *United States v. Martinez-Morel*, 118 F.3d 710, 715 (10th Cir. 1997).

The district court determined evidence concerning Mr. Gianetta's relationship with the Bureau was neither relevant nor material to the issues on trial. District courts have broad discretion in making rulings on the relevancy of evidence. *See Alexander*, 849 F.2d at 1301. This court reviews such evidentiary rulings for abuse of discretion. *Id.*

The district court did not abuse its discretion in ruling, after *in camera*

review of the relevant documents, that Mr. Gianetta's past relationship with the Bureau was not material to his trial for armed bank robbery. As the court noted, the case against Mr. Gianetta consisted primarily of eyewitness identifications, including that of a teller who followed the robber and took him into custody within a minute or two of the robbery. The court reasonably concluded Mr. Gianetta's story did not speak to this evidence.

Fifth, Mr. Gianetta contends the issues discussed above, when taken together, demonstrate his Sixth Amendment right to present his own case was violated. As discussed above, Mr. Gianetta's arguments on the four issues he raises on appeal are unavailing. He gains no synergistic effect from raising all four arguments in conjunction. The right to present a defense is a "fundamental element of due process of law." *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (internal quotation marks omitted), *petition for cert. filed*, (U.S. Nov. 6, 1997) (No. 97-7018). However, in presenting a defense, a defendant must abide by the rules of evidence and procedure. *Id.* at 871-72. This includes standards of relevance and materiality. Mr. Gianetta had no constitutional right to present irrelevant and immaterial evidence in his defense, *see Washington*, 388 U.S. at 23, and therefore the district court did not violate his Sixth Amendment right to present a defense by preventing such evidence from being admitted at trial.

-12-

For the reasons discussed above, the decision of the district court is

**AFFIRMED** .

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge