**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 25, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESUS ALONSO PIZARRO-ZUBIAS,
a/k/a Chapito,

    Defendant - Appellant.

No. 23-1412
(D.C. No. 1:22-CR-00167-RM-16)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

A jury convicted Jesus Pizarro-Zubias of several offenses based on his role in a cocaine-trafficking conspiracy. He asks us to reverse his convictions, arguing that the district court abused its discretion by denying his motion for a continuance to secure two additional witnesses in support of his defense. We see no abuse of discretion and affirm.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**Background**

Pizarro-Zubias was one of more than 30 defendants named in a sprawling May 2022 indictment arising from an alleged conspiracy to traffic cocaine from Mexico to Colorado. Based on surveillance and wiretap-intercepted calls and texts, investigators theorized that Pizarro-Zubias, also known as "Chapito," was selling cocaine and laundering money. He was charged with two counts of using a communication device to facilitate the commission of a felony drug offense; one count of conspiracy to distribute and possess with intent to distribute cocaine; and one count of distributing and possessing with intent to distribute cocaine.

As Pizarro-Zubias's trial date approached, several of his codefendants accepted plea deals. On July 18, 2023, the government disclosed reports of cooperating witnesses, revealing that several of those codefendants planned to testify. Pizarro-Zubias's counsel was out of town until July 24, and he did not have an opportunity to meet with his client until August 1. At this meeting, Pizarro-Zubias told defense counsel about two potential witnesses who would rebut the government's cooperators and prove "critical" to his defense. R. vol. 1, 503. On August 8, defense counsel moved for a "short continuance" to obtain the witnesses' testimony. *Id.* at 504.

At a pretrial hearing several days later, defense counsel expounded on his argument. He explained that over the past week, he had made efforts to contact the witnesses and told the court that one of the witnesses was local but would be "a challenge to get" because that person would likely invoke their Fifth Amendment

right against self-incrimination. Supp. R. vol. 1, 585. He had not yet reached the other potential witness, Pizarro-Zubias's sister and the mother of one of the cooperators, who was in Mexico. Counsel admitted his motion was "kind of . . . speculative," but he believed the witnesses would contradict the government's most critical witness. *Id.* Meanwhile, the government opposed the motion because it would delay the cooperators' sentencing.

Noting that two weeks remained until trial and that the case had been pending for more than a year, the district court denied a continuance. The court emphasized the "speculative" nature of the motion, "both in terms of the value of the witnesses and any reason why the witness[es] . . . ha[ve] not been able to be contacted up to now." *Id.* at 589.

At trial, testimony from the government cooperators and the intercepted calls and texts shed light on Pizarro-Zubias's role in the cocaine conspiracy. Cooperator Alejandro Blanco-Caballero testified that in September 2021, he obtained two kilograms of cocaine from Pizarro-Zubias. Blanco-Caballero also testified about an occasion in December 2021 when Pizarro-Zubias gave him $20,000 in proceeds from cocaine sales. And cooperator Elder Gutierrez-Pizarro, Pizarro-Zubias's nephew, testified that in January 2022, he delivered five kilograms of cocaine to a buyer for his uncle.

Pizarro-Zubias's defense was that he had delivered only cash—never cocaine—and that he knew nothing about the broader drug conspiracy. He attempted to cast doubt on the meaning of intercepted calls and texts by highlighting instances

where the word "piece" was used to refer to money, not cocaine. And he noted that Blanco-Caballero initially told police that Pizarro-Zubias only brought him money but changed his story after signing a plea agreement. The defense also maintained that the transaction about which Gutierrez-Pizarro testified dealt with marijuana, not cocaine. Pizarro-Zubias emphasized the favorable sentencing the cooperators received in exchange for their pleas.

The jury was initially hung on two counts, but after receiving an instruction to deliberate further, it reached a verdict. The jury found Pizarro-Zubias guilty of all four charges. The court sentenced him to 210 months in prison on each count, to be served concurrently, and five years of supervised release.

Pizarro-Zubias appeals.

**Analysis**

Pizarro-Zubias contends the district court erred by denying his motion for a continuance.[1] We review a district court's decision to deny such a motion for abuse of discretion, reversing only if the court's ruling was "arbitrary or unreasonable and materially prejudiced the defendant." *United States v. Glaub*, 910 F.3d 1334, 1344 (10th Cir. 2018) (quoting *United States v. McKneely*, 69 F.3d 1067, 1076–77 (10th

---

[1] Pizarro-Zubias also suggests that he was deprived of his Sixth Amendment right to put on a defense. But as the government points out, he did not raise this argument before the district court. And on appeal, he fails to argue for plain-error review in his opening brief, nor did he file a reply, so we decline to consider this argument. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all.").

Cir. 1995)). To evaluate whether the denial was arbitrary or unreasonable, we assess the following factors: (1) "the diligence of the party requesting the continuance;" (2) "the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance;" (3) "the inconvenience [of the continuance] to the opposing party, its witnesses, and the court;" and (4) "the need asserted for the continuance and the harm that appellant might suffer as a result." *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987); *see also United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (quoting *West* to set out same four factors).[2] The burden of proof lies with the defendant. *See United States v. McClaflin*, 939 F.3d 1113, 1117 (10th Cir. 2019) (holding defendant "ha[d] not clearly satisfied" any of the *West* factors). We consider each in turn.

## I.    Diligence

Pizarro-Zubias argues that his counsel's diligence in seeking a continuance weighs in favor of reversal. To evaluate diligence, we ask when the purported need for a continuance arose and how soon thereafter counsel requested one. *United States v. Cervantes*, 4 F.4th 1089, 1094 (10th Cir. 2021). We also look more broadly at counsel's diligence in representation, including efforts made to pursue potential witnesses. *United States v. Pursley*, 577 F.3d 1204, 1228 (10th Cir. 2009).

---

[2] Our caselaw refers to these as both "the *West* factors" and "the *Rivera* factors," but because *Rivera* quoted the factors from *West*, we follow the parties' lead and refer to them as "the *West* factors."

Here, the government disclosed the new reports of cooperating witnesses on July 18. Pizarro-Zubias's attorney was out of town until July 24. On August 1, he drove two hours to see his client, and that is when Pizzaro-Zubias shared information about the new potential witnesses. Within a week, Pizarro-Zubias's counsel moved for a continuance.

The government concedes that this condensed timeline tends to show diligence. At the same time, the government raises questions about counsel's overall diligence based on the remaining record. For instance, at the pretrial hearing, Pizarro-Zubias's attorney claimed he "made efforts to contact" the witnesses, but he didn't detail the nature of those efforts. Supp. R. vol. 1, 585.

As further reason to doubt counsel's diligence, it appears that the July 18, 2023 report likely did not contain new information. Pizzaro-Zubias contends that in the report, Blanco-Caballero accused him for the first time of moving not just money, but also cocaine. Yet this detail emerged at least four months earlier, in February 2023, when Blanco-Caballero stipulated in his plea agreement that Pizarro-Zubias provided two kilograms of cocaine for a drug deal. Similarly, Pizzaro-Zubias had already been on notice of the government's theory that he directed his nephew to deliver cocaine, not marijuana, because the government shared this information in a March 2023 *James* proffer.[3] At a June 2023 hearing about the *James* proffer, the

---

[3] A *James* proffer refers to the showing required when a party intends to introduce statements by a coconspirator as nonhearsay under Federal Rule of Evidence 801(d)(2)(E). *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (citing *United States v. James*, 590 F.2d 575 (5th Cir. 1979)).

government stated that "while there may have also been a marijuana conspiracy," the cooperators' testimony would focus on the cocaine conspiracy. R. vol. 1, 622–23. Viewed in this context, we question the immediacy of Pizarro-Zubias's asserted need for additional witnesses. Indeed, as the district court put it, "there's nothing that's a surprise here." Supp. R. vol. 1, 589. Thus, although Pizarro-Zubias's counsel moved quickly to request a continuance after speaking to his client following the government's report of cooperating witnesses, his overall diligence was lacking. This factor weighs slightly against Pizarro-Zubias.

## II.    Usefulness of Continuance

The next factor we consider is whether the continuance, if granted, would have been useful in accomplishing the stated purpose of the continuance. *West*, 828 F.2d at 1470. Pizarro-Zubias argues that the continuance would have allowed him to find and interview the potential witnesses. He notes that one witness was local, and the other was his sister, so they could have been easily located with additional time.

Unfortunately for Pizarro-Zubias, this argument effectively cuts against the usefulness of a continuance. If the witnesses could easily be contacted, counsel could have used the remaining two weeks before trial for that purpose. As the district court observed when denying the continuance, Pizarro-Zubias failed to explain why the witnesses "ha[d] not been able to be contacted" yet. Supp. R. vol. 1, 589. Nor does he explain that now.

Moreover, the record reflects that a continuance was unlikely to result in securing these witnesses' testimony. As Pizarro-Zubias's counsel admitted, the local

7

witness would be "a challenge" because that person was likely to invoke their privilege against self-incrimination.[4] *Id.* at 585. And defense counsel told the court that he had not been able to reach Pizarro-Zubias's sister, who the district court noted was "outside the [court's] jurisdiction." *Id.* at 582.

On appeal, Pizarro-Zubias contends that "there exists good cause to believe that [his sister] could and would have made the trip to testify" based on "the importance of the family dynamic." Aplt. Br. 18. But he fails to acknowledge the other family dynamic at play—Pizarro-Zubias's sister was also coconspirator Gutierrez-Pizarro's mother. To testify favorably for Pizarro-Zubias, she would have had to refute her own son's testimony that he transported cocaine, not marijuana, for his uncle. And Pizarro-Zubias presents no evidence she was likely to do so. Because Pizarro-Zubias's contention that the continuance would have accomplished its stated purpose is speculative, this factor counts against him.

## III.    Inconvenience

We next consider the inconvenience of the continuance to the government and the court. *West*, 828 F.2d at 1470. This factor cuts heavily in favor of the opposing party where a motion for continuance is made close to the trial date. *See Rivera*, 900

---

[4] This witness was supposedly involved in Pizarro-Zubias's marijuana operation. Pizarro-Zubias contends that the witness's unavailability due to a Fifth Amendment privilege was "suggested by the [district c]ourt despite no evidence being provided that the witness would not want to testify due to some type of criminal activity." Aplt. Br. 19. But Pizarro-Zubias's counsel confirmed that privilege would be an issue when he told the district court, "I don't think we're going to get that witness for the reasons you just said." Supp. R. vol. 1, 588.

F.2d at 1475 ("[A]ny continuance granted practically on the eve of trial inevitably will disrupt the schedules of the court, the opposing party, and the witnesses."); *McClaflin*, 939 F.3d at 1118 (finding inconvenience when motion for continuance made five days before hearing). We are also more likely to find unjustified inconvenience when a party requests either a long continuance or one of uncertain length. *See Pursley*, 577 F.3d at 1228 (noting 24-week delay would wreak havoc on district court's congested docket); *Rivera*, 900 F.2d at 1475–76 (resolving inconvenience factor against defendant who "fail[ed] to specify the additional time needed"). In contrast, a request for a short continuance, such as half a day, that would not "necessitate[] the recalendaring of other matters," is unlikely to cause much inconvenience. *West*, 828 F.2d at 1470.

Here, Pizarro-Zubias moved for a continuance of "30 to 60 days" roughly two weeks before trial. Supp. R. vol. 1, 585. That is considerably longer than the half day requested in *West*. 828 F.2d at 1470. And although not made "on the eve of trial," the motion came only two weeks before trial. *Rivera*, 900 F.2d at 1475. On appeal, Pizarro-Zubias's only argument for a lack of inconvenience is that the continuance would not have resulted in the cooperators spending additional time behind bars, as all received sentences longer than 18 months. But even if this argument undermines the inconvenience to the government and witnesses, Pizarro-Zubias fails entirely to discuss the impact on the court.[5] And it seems clear that a 30-to-60-day continuance

---

[5] Pizarro-Zubias contends that the district court found a continuance would not have caused meaningful inconvenience here. Not so. Rather, the district court merely

granted two weeks before the scheduled trial would inconvenience the court. So this factor also weighs against Pizarro-Zubias.

## IV.  Need and Prejudice

Last, Pizzaro-Zubias contends that he was materially prejudiced by denial of the continuance. *See West*, 828 F.2d at 1470 (stating that fourth factor is "the need asserted for the continuance and the harm that appellant might suffer as a result"). This factor "is the most important" of the four. *United States v. Orr*, 692 F.3d 1079, 1100 (10th Cir. 2012). To make an adequate showing under this factor, a defendant must identify what "substantial favorable evidence" would have been uncovered if a continuance was granted. *Rivera*, 900 F.2d at 1476. For example, in *West*, we found the defendant had adequately demonstrated a need for a continuance because the continuance would have enabled him to produce an eyewitness who would have testified that someone other than the defendant killed the victim. 828 F.2d at 1469–71. And in addition to demonstrating a need, a defendant must also demonstrate prejudice; vague assertions about the usefulness of additional evidence will not suffice. *See Rivera*, 900 F.2d at 1476 (finding no prejudice where defendant failed to explain "precisely what would have been discovered" had continuance been granted); *Glaub*, 910 F.3d at 1345 (finding no prejudice where defendant did not "identify any witnesses who would have testified or detail[] the testimony they would have

---

remarked that it was "not inclined to deny the motion" based on the government's argument that a continuance would result in the cooperators having to wait longer for sentencing. Supp. R. vol. 1, 589.

given").

Here, Pizarro-Zubias's vague assertions about the testimony demonstrate neither need nor prejudice. His own trial counsel put it best when he admitted his motion was "kind of speculative." Supp. R. vol. 1, 585. Regarding need for the continuance, Pizarro-Zubias broadly contends that the local witness involved in his marijuana operation would have rebutted the government's witnesses, and his sister "likely could and would have" contradicted her son's claims about the cocaine transaction. Aplt. Br. 12. As we've discussed, he fails to explain what exactly the witnesses would have said or why he could not reach them in the two weeks that remained before trial. Indeed, like defense counsel, the district court found the grounds for the motion "speculative." Supp. R. vol. 1, 589. We agree. *See Rivera*, 900 F.2d at 1476 (finding no need for continuance where defendant failed to show "substantial favorable evidence would have resulted" from continuance).

And without knowing what the witnesses would have said, it is difficult to conclude Pizarro-Zubias was prejudiced by their exclusion. Pizarro-Zubias argues, without elaborating, that these witnesses would have contradicted or refuted other witnesses. Yet defense counsel remained able to contradict and refute the government's key witnesses anyway. Through cross-examination of Blanco-Caballero, defense counsel elicited that the term "piece" was also used to refer to money, not just drugs. Defense counsel also established that Blanco-Caballero changed his story: he initially said Pizarro-Zubias brought him money, but in his plea agreement, he said it was cocaine. And the defense pushed the theory about

11

Gutierrez-Pizarro transporting marijuana, not cocaine, in the opening and closing statements and through testimony from a federal agent about Pizarro-Zubias's marijuana operation. What's more, for all cooperators, defense counsel cast doubt on their credibility by repeatedly highlighting the favorable sentences they received in exchange for their cooperation. Because defense counsel could otherwise accomplish the general purpose asserted for the two witnesses and because we don't know what "substantial favorable evidence" they would have offered, Pizarro-Zubias fails to show need or prejudice.[6] *Rivera*, 900 F.2d at 1476. Like the others, this factor cuts against him.

In sum, Pizarro-Zubias can't shoulder his burden under the *West* factors. He fails to demonstrate his counsel's diligence in securing the two witnesses' testimony or the likelihood that a continuance would have resulted in their testimony. Further, Pizarro-Zubias doesn't dispute that a continuance likely would have inconvenienced the court. Finally, unable to articulate what the supposedly crucial witnesses would say, Pizarro-Zubias fails to show either a need for the continuance or the prejudice that he would suffer without the continuance.

---

[6] Pizarro-Zubias urges us to infer prejudice from the fact that the jury struggled to reach a verdict. But we simply don't know what the witnesses would have said, so the jury's struggles, on their own, are not enough to show that the witnesses' speculative testimony would have had an impact.

12

**Conclusion**

Considering Pizarro-Zubias suffered no prejudice and the remaining *West* factors weigh against him, the district court did not abuse its discretion by denying his motion for a continuance.

Entered for the Court

Nancy L. Moritz
Circuit Judge