**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

GUNTHER GLAUB,

        Defendant - Appellant.

No. 17-1182

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:16-CR-00184-RM-1)**

---

Laura B. Wolf (Siddhartha H. Rathod with her on the briefs), Rathod | Mohamedbhai LLC, Denver, Colorado, for Appellant.

James C. Murphy, Assistant United States Attorney (Robert C. Troyer, Acting United States Attorney, with him on the brief), Denver, Colorado, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  Introduction

Defendant-Appellant, Gunther Glaub, was convicted of violating the criminal provisions of the False Claims Act.  18 U.S.C. § 287.  He challenges

those convictions, arguing his act of submitting personal bills and invoices to the United States for payment was protected by the First Amendment. He also challenges the jury instructions given in his trial on the basis that they failed to set forth the correct definition of the term "claim."

We have jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm** Glaub's convictions.

## II.    Factual Background

Glaub was charged by indictment with five counts of violating the criminal provisions of the False Claims Act ("FCA"), 18 U.S.C. § 287.[1] The indictment alleged Glaub sent personal bills and invoices to the Director of the Finance Office, United States Department of Agriculture ("USDA") seeking payment, despite knowing the debts were owed by him. The invoices related to purchases of expensive vehicles; the bills related to the payment of a student loan debt owed by Glaub to the United States Department of Education and a debt owed by Glaub to Bellco Credit Union. The documents were all accompanied by a note from Glaub which stated: "Thank you for paying this debt."

Glaub filed a pre-trial motion seeking to have the FCA charges dismissed, asserting he had a first amendment right to freedom of speech and to petition the

---

[1]Glaub was also charged with one count of Mailing a Fictitious Financial Instrument, in violation of 18 U.S.C. § 514(a)(3). This charge was dismissed by the government.

government for redress of grievances. He claimed his speech involved an expression of "his genuine view that the federal government is or should be liable for its citizens' private debts." Accordingly, Glaub's argument continued, his act of submitting the bills and invoices was speech protected by the First Amendment. Glaub also argued that 18 U.S.C. § 287 is unconstitutional as applied to his activities. In the alternative, he argued there was insufficient evidence to support the charges.

In its written response to Glaub's motion, the government first noted that the question of whether the evidence was sufficient to secure a conviction was one for the jury and could not be resolved in a motion to dismiss an indictment. As to Glaub's constitutional arguments, the government asserted the First Amendment does not protect the submission of false claims to the government. *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) ("Where false claims are made to effect a fraud or secure moneys or other valuable considerations, . . . it is well established that the Government may restrict speech without affronting the First Amendment."). The goverment also argued that § 287 is not unconstitutionally overbroad because it criminalizes only the submission of certain claims, i.e., those that are "false, fictitious, or fraudulent."

The district court held a hearing on the motion. At the hearing, Glaub argued the indictment should be dismissed because his conduct was not unlawful

for two reasons. First, he argued the documents he mailed to the USDA were not claims, as that term is used in § 287, because there is no actual program or policy pursuant to which the United States government pays a citizen's personal debts. Glaub also argued the indictment was legally insufficient because the documents he submitted to the USDA were not false, fictitious, or fraudulent on their face. The district court concluded these questions could not be decided until trial, after a full evidentiary record was developed.[2]

Glaub also presented his first amendment argument at the hearing. He asserted the documents he sent to the USDA were merely the expression of his viewpoint on the government's obligation to pay the private debts of its citizens and, as such, his conduct was speech protected by the First Amendment. Glaub also argued § 287 is unconstitutionally overbroad if it reaches his conduct. The district court rejected these arguments, concluding that if Glaub intended to make a false claim against the United States by sending his bills to the USDA, his conduct was not protected by the First Amendment. *See Alvarez*, 567 U.S. at 723. Because the intent element involved a jury finding, the question of whether Glaub's speech was constitutionally protected could not be determined as a matter of law before trial. *See* Fed. R. Crim. P. 12(b)(1) and 12(b)(3)(B)(v)

---

[2]*See infra* § III.A. (rejecting the proposition that a claim cannot be false, fictitious, or fraudulent unless the documents submitted to the government are altered or counterfeit).

(providing that a pre-trial motion alleging a defect in the indictment can be made only if the issue presented "can be determined without a trial on the merits"). Accordingly, the district court refused to dismiss the charges. *See id*. As to the issue of whether the statute was overbroad, the court concluded there was no legal support for Glaub's position.

The matter eventually proceeded to trial. The government called five witnesses, each of whom was cross-examined by Glaub. At the close of the prosecution's case, Glaub moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29. He challenged the sufficiency of the evidence, arguing, *inter alia*, there was no testimony showing the claims he submitted were false, fictitious, or fraudulent. The district court denied the motion.

The jury found Glaub guilty of five counts of submitting false claims to the government. Two weeks later, Glaub filed a written Rule 29(c) motion for judgment of acquittal. He, again, argued the prosecution presented no evidence the claims he submitted were false, fictitious, or fraudulent. Glaub also argued the evidence was insufficient to meet the *mens rea* requirements for the crimes charged. The district court denied this motion.

## III.  Discussion

### A.  Sufficiency of the Evidence

Glaub raises numerous challenges to the district court's rulings. Specifically, he argues the district court erred by refusing to dismiss the charges against him, erred by failing to acquit him, and erred by "expanding the reaches of the False Claims Act."  These issues are all based on Glaub's assertion that he has a first amendment right to petition the government for the payment of his private debts.  The Supreme Court, however, has held that the submission of a false claim to the government is not protected by the First Amendment.  *Alvarez*, 567 U.S. at 723 ("Where false claims are made to effect a fraud or secure moneys or other valuable considerations . . . it is well established that the Government may restrict speech without affronting the First Amendment."); *see also United States v. Stevens*, 559 U.S. 460, 468 (2010) (listing the following categories of speech as those that are not protected by the First Amendment:  obscenity, defamation, fraud, incitement, and speech used as an integral part of conduct in violation of a valid criminal statute).  This court has likewise held that "the First Amendment provides no protection for knowingly fraudulent or frivolous claims."  *United States v. Ambort*, 405 F.3d 1109, 1117 (10th Cir. 2005).  In other words, "speech is not protected by the First Amendment when it is the very vehicle of the crime itself."  *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.

1970).  Accordingly, the First Amendment does not protect Glaub's speech if, by sending his private bills to the USDA, he knowingly filed a false claim in violation of § 287.

"A claim is false or fictitious within the meaning of § 287 if untrue when made, and then known to be untrue by the person making it or causing it to be made.  A claim is fraudulent if known to be untrue, and made or caused to be made with the intent to deceive the Government agency to whom submitted." *United States v. Irwin*, 654 F.2d 671, 683 n.15 (10th Cir. 1981) (quotations omitted), *overruled on other grounds by United States v. Daily*, 921 F.2d 994, 1005 (10th Cir. 1990).  Thus, as the district court correctly concluded, the first amendment issue could not be resolved before trial because it involved factual questions relating to Glaub's state of mind.  If Glaub possessed the requisite criminal intent when he sent his bills to the USDA, his speech is not protected by the First Amendment even though it was directed at the government.

Although Glaub's appellate arguments focus primarily on first amendment legal principles, the first amendment issues arising in this FCA criminal prosecution hinge on the factual question of intent.  Because that question was properly submitted to the jury, Glaub is not entitled to reversal of his convictions under any of the numerous first amendment theories he raises unless he first shows the government's evidence on the intent element was insufficient.  *See*

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 620 n.9 (2003) (holding the goverment bears "the burden of proving that the speech it seeks to prohibit is unprotected"). Glaub's argument on this point begins with a single sentence in his reply brief that reads: "The government makes no showing . . . of how [his] speech could be considered 'fraudulent.'" Appellant Reply Br. at 2. His subsequent argument, like this sentence, is not accompanied by any citation to the record or any discussion of the evidence presented at trial. Instead, he makes conclusory assertions that his conduct was "devoid of any elements of fraud" and was "likewise devoid of falsity." *Id*. at 4.

In a more focused argument on sufficiency, Glaub asserts the prosecution failed to show his claims were false, fictitious, or fraudulent because it did not present evidence that he altered any of the information on the documents he submitted to the USDA. This argument is not persuasive. The statutory language is clear on its face—it is the *claim* that must be false, fictitious, or fraudulent. 18 U.S.C. § 287. The statutory language provides no support for the proposition that a claim cannot be false, fictitious, or fraudulent unless the *documents* submitted are incorrect, counterfeit, or altered in some way. The conduct of an individual who submits an unaltered personal bill to the government knowingly seeking a payment the government has no obligation to make is no different than the conduct of an individual who alters the amount on a bill otherwise

legitimately payable by the government.  In both situations, the individual is knowingly seeking to obtain monies from the government to which he is not entitled.  Even if documents supporting a claim are unaltered, the falsity of the *claim* lies in the representation, either express or implied, that the government has an obligation to pay the amount submitted.  Accordingly, the submission of an unaltered personal bill to the government, together with a request that the government pay the debt, can be a false claim if the individual submitting the bill knew the government had no obligation to pay it.

Here, the prosecution's evidence showed that Glaub sent multiple bills and invoices to the specific address of a government agency; the bills and invoices were addressed to a federal employee with authority to pay claims and disburse funds (*see* 7 C.F.R. § 2.28); the bills were for private debts owed by Glaub and the invoices were for personal vehicles Glaub sought to purchase from a car dealership; the documents were accompanied by a statement thanking the government for paying the bills; and several of the submissions included detailed information instructing the government on how to transfer monies by wire to Glaub's bank account and to the car dealership.[3]  This evidence is sufficient to

_____

[3]Three of the documents Glaub submitted to the USDA were buyer's orders for new vehicles, including a $73,773 Corvette.  These buyer's orders contained instructions, including banks account and routing numbers, on how to transfer funds to the dealership's bank account.  Paul Lowery, a salesman at the dealership, testified that Glaub came to the dealership more than once and seemed
(continued...)

permit a reasonable jury to find that (1) by submitting the bills and invoices to the USDA, Glaub was making a false, fictitious, or fraudulent statement that the government had an obligation to pay them and (2) Glaub knew the government had no obligation to pay the bills. *See United States v. Abbott Washroom Sys., Inc.*, 49 F.3d 619, 624 (10th Cir. 1995) (stating the essential elements of a § 287 FCA claim as "(1) the defendant[] knowingly made and presented to a department or agency of the United States a false, fraudulent or fictitious claim against the United States; and (2) the defendant acted with knowledge that the claim was false, fraudulent or fictitious").

Glaub also argues the prosecution was required to prove an actual risk of loss to the government. Glaub does not state whether he raised this issue before the district court or whether he asked the court to instruct the jury on this additional element. Regardless, the authority on which Glaub relies does not support this proposition and § 287 contains no such actual-harm requirement.

In short, Glaub makes no reasoned argument as to how the evidence was insufficient to support the jury's finding that he knowingly submitted a request to the government seeking payments to which he knew he was not entitled.

_____

[3](...continued)
serious about purchasing a vehicle. Mr. Lowery said he spent "at least a few hours" with Glaub.

Accordingly, Glaub is not entitled to relief under any of the various first amendment theories he presents.

## B. Constitutional Challenges

Glaub also makes two constitutional challenges to his conviction. He first asserts he was prosecuted because of his political associations or viewpoints. Glaub does not indicate in his opening brief whether or when this issue was raised before the district court and, if so, how the district court resolved it. This court has searched the record and determined Glaub did not expressly seek to dismiss the indictment on the basis of selective prosecution, making no mention of Fed. R. Crim. P. 12(b)(3)(A)(iv) in his Motion to Dismiss Counts One Through Five of the Indictment. Instead, it was the government that interpreted the motion to incorporate such an argument. Based on the arguments made by the government, the district court addressed the issue, concluding the evidence was insufficient to show that Glaub had been prosecuted because of his beliefs or associations.

Although Glaub does not set it out in his opening brief, the standard applicable to a selective prosecution claim is "a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id*. at 465 (quotation omitted). Because

Glaub does not cite the relevant standard, he makes no attempt to show how he meets it. Most obvious is the lack of any argument on discriminatory effect. Accordingly, the issue is waived. *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) ("[A]rguments not set forth fully in the opening brief are waived.").

Glaub further argues § 287 is "unconstitutional as applied" because it is overbroad if it reaches his conduct. An overbreadth challenge, however, is a facial challenge not an as-applied challenge. *Faustin v. City & Cty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001). Glaub's argument is, thus, no different than any of the first amendment theories we have already rejected.[4] *See id*. ("The overbreadth doctrine does not apply when there is no significant difference between the claim that the ordinance is invalid because of overbreadth and the claim that it is unconstitutional when applied to the plaintiff's own activities.").

## C. Jury Instructions

Glaub raises several challenges to the jury instructions given by the district court. A district court's refusal to give a jury instruction is reviewed for abuse of discretion. *United States v. Gonzales*, 456 F.3d 1178, 1181 (10th Cir. 2006). "In assessing whether the district court properly exercised its discretion, we review the instructions *de novo* to determine whether, taken as a whole, they accurately

---

[4]Included in this overbreadth challenge are remnants of Glaub's assertion the prosecution was required to prove risk of harm.

-12-

state the governing law." *Id.* "A defendant is entitled to an instruction on [his] theory of the case if the instruction is a correct statement of the law, and if [he] has offered sufficient evidence for the jury to find in [his] favor." *Id*. (quotation and alterations omitted).

### 1. First Amendment Theory

Glaub first argues the district court abused its discretion by refusing to instruct the jury on his first amendment theory of defense. The instructions Glaub proposed would have required the jury to consider whether Glaub "was engaging in lawful speech and association, including the lawful petition of the government for redress, protected by the First and Fourteenth Amendments to the United States Constitution." The district court declined to give the instruction on the grounds it was argumentative and not supported by the evidence. The court further ruled it was "not up to the jury to decide whether this conduct is protected by the First Amendment. Ultimately, what happens is, [Glaub] is guilty or not guilty. If it's a false claim, it's not protected by the First Amendment." The district court, however, did instruct the jury that: "It is the theory of the defense that Gunther Glaub's political associations and beliefs have colored the perceptions of his actions. Mr. Glaub maintains that at no time did he intend to defraud the United States and that he did not ever submit a false, fictitious or fraudulent claim against the government."

There was no abuse of discretion in refusing to give Glaub's instruction because the question of whether Glaub's conduct is protected by the First Amendment is one of law and not one for the jury. Glaub misreads *United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999), for the proposition that the question of whether speech falls within the protections of the First Amendment is a factual one for the jury. In *Viefhaus*, this court held that the factual question of whether the defendant's statement was a true bomb threat was one for the jury.[5] *Id.* at 395-397. Because the jury found it was a true threat, it was not protected by the First Amendment. *Id.* at 395, 396 ("The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability."). The same process was followed by the district court in this matter. The factual question of whether the documents Glaub sent to the USDA were false claims was submitted to the jury. Because the jury found they were false claims, Glaub's speech was not protected by the First Amendment. Thus, the instruction given by the district court, not the one requested by Glaub, was the correct statement of the law.

---

[5]*Viefhaus* also states: "If there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (citing *United States v. Malik,* 16 F.3d 45, 51 (2d Cir. 1994)). This is an unremarkable proposition and, as in *Viefhaus*, it is "a scenario . . . not present here." *Id.*

Related to his jury-instruction challenge is Glaub's complaint, made during oral argument in this matter, that he was not permitted to present a first amendment defense but was limited to an "intent based" defense. Because, as the district court correctly recognized, the first amendment issue hinged on Glaub's state of mind, there are no relevant differences between these two defenses. Glaub does not direct this court to any portion of the trial transcript supporting his allegations of thwarted attempts to elicit testimony relevant to his first amendment defense.[6] Our review of the record uncovered no support for Glaub's assertion that he was somehow precluded from putting on a first amendment defense.

During opening arguments, the first statement made by Glaub's counsel to the jury was as follows: "False, fictitious, fraudulent. To be criminal, a claim must be false, fictitious or fraudulent, that is because the right to petition the government is implicit and the very idea of our republican form of government." Counsel then proceeded to tell the jury that Glaub was targeted because of his unpopular beliefs even though those beliefs are "protected by the First Amendment of the United States Constitution." After describing the conduct charged in the indictment, counsel then stated: "Yet, you have a constitutional

---

[6]It is possible Glaub's reference at oral argument to his inability to present evidence in support of his defense was to the district court's refusal to permit him to call several FBI agents as defense witnesses. Glaub does not directly challenge that ruling in this appeal and, therefore, we do not consider it.

right to petition the government.  You have a right to send your personal debts to the government and ask the government to pay them."

Glaub did not testify and he did not call any witnesses.  Consistent with his opening statement, however, Glaub extensively cross-examined Special Agent Alex Zappe, the FBI agent who conducted the investigation.  Glaub questioned Agent Zappe on the beliefs of the sovereign citizen movement and whether Glaub was a member of the movement even though these matters were not discussed by Agent Zappe during direct examination.[7]  Glaub's counsel represented to the district court that this line of cross-examination was within the scope of direct because it was relevant to Glaub's intent.  The record, thus, shows the district court was extremely permissive in allowing Glaub to challenge the government's evidence of intent.

### 2.  Definition of Claim

Glaub next argues the district court erred when it refused to give the instruction he sought on the definition of "claim."  His proposed instruction defined a claim as "a demand for money or property to which an individual asserts a right against the Government based upon the Government's own liability to the individual."  This instruction was derived from the Supreme Court's

---

[7]Despite this line of cross-examination, Glaub states in his opening brief that he "denies membership in the sovereign citizen movement."  Appellant Br. at 13.

opinion in *United States v. Cohn*, 270 U.S. 339 (1926). In *Cohn* the Court stated: "the provision [of the False Claims Act] relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant." *Id*. at 345-46. The district court ruled the statement from *Cohn* was not actually a definition of the term "claim" and that the issue addressed in *Cohn* had "nothing to do with" the issues in Glaub's case. Concluding the *Cohn* language was confusing, the district court gave the following instruction instead: "A 'claim' is a demand for money, property, credit or reimbursement."

Glaub argues the instruction given was erroneous for two reasons. First, it expanded the definition of a claim by eliminating the requirement that the claim must be made "upon or against the United States." He argues the *Cohn* Court expressly considered and rejected the notion that "claim" (in the context of a criminal prosecution under the False Claims Act) simply means "a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty." *Id*. at 346 (quotation omitted). This argument can be easily rejected because the instructions, as a whole, correctly stated the law. *See Gonzales*, 456 F.3d at 1181. Specifically, Instruction No. 19 stated:

This law makes it a crime to knowingly make a false, fictitious or fraudulent claim against any department or agency of the United States. The Department of Agriculture is a department or agency of the United States within the meaning of this law.

To find the defendant guilty of a violation of this statute, as charged in each count of the indictment, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: The defendant knowingly made and presented to the Department of Agriculture a false, fictitious or fraudulent claim against the United States, . . .

. . .

It is sufficient if the defendant submits the claim to a third party knowing that the third party will submit the claim or seek reimbursement from the United States or a department or agency thereof.

Read as a whole, the instructions clearly required the jury to find that the claims were made upon or against the United States.

Glaub further argues the instruction was erroneous because it permitted the jury to find him guilty without finding that the claims were premised on the government's liability to him. *See Cohn*, 270 U.S. at 345. According to Glaub, by stating that a claim must be "based upon the Government's own liability to the claimant," *Cohn* requires that false claims, in the context of a criminal prosecution, must involve a request for a disbursement for work done, reimbursement for purchases made on behalf of the government, or payments based on the government's actual duty to make such payments. *See id*. at 345.

That situation, he argues, is not present here because he submitted bills for private expenses, not requests for disbursements from government programs or reimbursements for services he provided to the government.

The Supreme Court rejected Glaub's reading of *Cohn* in *United States v. Neifert-White Co.*, 390 U.S. 228 (1968). There, the respondent supplied false information to support its application for a loan from a federal agency. *Id.* at 229. Respondent took the "position that the term 'claims' in the [FCA] must be read in its narrow sense to include only a demand based upon the Government's liability to the claimant." *Id.* at 230. The Court disagreed, distinguishing *Cohn* as follows:

> *Cohn* involved a criminal proceeding under an earlier version of the present False Claims Act. It concerned a fraudulent application to obtain the release of merchandise which did not belong to the United States and which was being held by the customs authorities as bailee only. The case did not involve an attempt, by fraud, to cause the Government to part with its money or property, either in discharge of an obligation or in response to an application for discretionary action. The language in the Court's opinion upon which respondent relies cannot be taken as a decision upon a point which the facts of the case did not present.

*Id.* at 230-31 (footnotes omitted). Although *Neifert-White* did not involve a criminal prosecution, the Court's explanation of why *Cohn* does not supply a definitive definition of the term "claim" is equally applicable in this matter. Further, the *Neifert-White* Court expressly stated that the FCA should not be read rigidly or restrictively even though it "impose[s] criminal sanctions as well as

-19-

civil."[8]  *Id*. at 232.  Against that backdrop, the Court held that the FCA "reaches

beyond 'claims' which might be legally enforced, to all fraudulent attempts to

cause the Government to pay out sums of money."  *Id*. at 233.  This holding

forecloses Glaub's argument that the jury was erroneously instructed on the

definition of "claim" because his demands for payment were not tied, in some

way, to a program administered by the government.[9]

Glaub raises two additional challenges to the jury instructions.  He argues

his convictions must be set aside if the claim instruction is upheld because he was

not sufficiently on notice that his conduct was criminal.  His assertion that the

Supreme Court's decision in *Cohn* "was the only fair warning regarding what

lines may not be crossed," is unpersuasive in light of the Court's subsequent

holding in *Neifert-White*.  He also relatedly argues the district court's claim

instruction "expanded the reach" of the FCA to criminalize constitutionally

---

[8]*See Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 128 n.8
(2003) ("The FCA's civil and criminal provisions were bifurcated in 1878 . . . and
the latter provisions have since been recodified at 18 U.S.C. § 287.").

[9]Glaub's position is not supported by the plain language of the FCA, which
does not limit false claims to those involving requests for payments from existing
government programs.  31 U.S.C. § 3729(a)(2); 18 U.S.C. § 287; *United States. v.
Neifert-White Co.*, 390 U.S. 228, 232 (1968) (noting the FCA is *broadly phrased*
to reach any person who makes or causes to be made 'any claim upon or against'
the United States" (emphasis added)).  As the government argues, Glaub's
interpretation of the term "claim" would lead to an absurd result, precluding
prosecution of claimants to whom the goverment actually owes nothing while
permitting prosecution of claimants to whom the government owes only a portion
of the amount submitted.

protected speech. This argument, though cast as a challenge to the jury instructions, ignores the intent element of the crime and is no different than Glaub's unsuccessful argument that his speech is protected by the First Amendment.

### D. Motion for Continuance

Prior to jury selection, Glaub moved for a continuance of the trial, arguing his defense was based on *Cohn* and the district court's refusal to give the claim instruction he requested meant his counsel could not provide an adequate defense. A district court's denial of a continuance motion is reviewed for abuse of discretion and the court's ruling will be reversed only if it was "arbitrary or unreasonable and materially prejudiced the defendant." *United States v. McKneely*, 69 F.3d 1067, 1076-77 (10th Cir. 1995) (quotation and alteration omitted). Based on Glaub's erroneous assertion the district court's ruling should be reviewed de novo, he appears to be presenting an ineffective assistance of counsel claim. *See United States v. Prows*, 118 F.3d 686, 691 (10th Cir. 1997) (involving a federal post-conviction motion filed pursuant to 28 U.S.C. § 2255). Such a claim, however, must be raised in collateral proceedings, not on direct appeal. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("[Ineffective assistance of counsel] claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). Because Glaub

does not explain why it would be appropriate to review his ineffective assistance claim on direct appeal, we decline to do so.

Glaub also cites the correct framework for reviewing the denial of a motion for a continuance. *See United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990). That framework involves an examination of four factors: (1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial. *Id*. The record shows that the parties' dispute over the meaning of the term "claim" arose during the infancy of the prosecution. Glaub was well aware of the possibility the district court would not resolve the dispute until trial. Thus, any assertion he was surprised by the court's ruling is not plausible. Also implausible is Glaub's assertion he was prejudiced by the district court's denial of a continuance. He argues the district court's ruling left him with a single defense to the charges, *i.e.*, lack of intent. He further argues if he had known his intent defense was the only one available to him, he would have prepared and examined numerous witnesses whose testimony would have led to his acquittal. This argument is wholly unsupported. Glaub has failed to identify any witnesses who would have testified or detailed the testimony they would have given. Thus, there is no basis on which this court can conclude he was prejudiced by the district court's ruling. Having considered the *Rivera*

factors in light of the record as a whole, we see no abuse of discretion in the district court's ruling.

## IV.    Conclusion

Glaub's convictions are **affirmed**.