**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROCKY HUTSON,

    Defendant - Appellant.

No. 18-1206
(D.C. No. 1:16-CR-00186-MSK-GPG-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **EBEL**, and **O'BRIEN**, Circuit Judges.
_____

Following a jury trial, Rocky Hutson was convicted of five counts of making

false claims in violation of the False Claims Act (FCA), 18 U.S.C. § 287, which

prohibits knowingly submitting "false, fictitious, or fraudulent" claims to the

government.[1]  We affirm.[2]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Hutson was also convicted of six counts of creating fictitious financial instruments in violation of 18 U.S.C. § 514(a)(1), and three counts of bank fraud in violation of 18 U.S.C. § 1344(1), but he does not challenge those convictions on appeal.

[2] Our jurisdiction derives from 28 U.S.C. § 1291.

## Background

Hutson's FCA convictions stem from his having submitted bills to the Director of the Finance Office at the United States Department of Agriculture (USDA), requesting that the agency pay for purchases he wanted to make. Each request for payment was accompanied by an invoice or contract he had with a private individual or entity, a note saying, "Thank you for paying this debt," and a modified check drawn on his closed personal account made payable to the "United States of America without recourse" for the amount to be paid. Supp. R. filed 3/12/19, Gov't Ex.'s 1-5.

Before trial, Hutson filed a motion to dismiss the FCA charges, claiming his conduct was political expression protected by the First Amendment and that it did not satisfy the elements of § 287. More specifically, he maintained that his requests for payment involved an expression of his "genuine belief" that the federal government is liable for its citizens' private debts, and that his act of "petition[ing] the government to pay his bills" was thus speech protected by the First Amendment. Supp. R. filed 2/25/19, Vol. 1, p. 56. In the alternative, he maintained that his submissions were not "claims" within the meaning of the FCA and that even if they were, the government's evidence was insufficient to prove that he knew they were false when he submitted them because he "whole heartedly believed" the government was responsible for his debts, *id*. at 59. The district court denied the motion to dismiss. It did not explain the basis for its rejection of Hutson's First Amendment argument but concluded that whether his submissions were claims and whether he acted knowingly were issues for the jury to decide.

Hutson also sought leave to present evidence and requested jury instructions consistent with an affirmative defense under the Religious Freedom Restoration Act (RFRA), which generally prohibits the government from burdening a person's exercise of religion, even by operation of a law of general applicability and provides that this provision of RFRA may be asserted as a defense in criminal proceedings. 42 U.S.C. § 2000bb–1(a), (c). The district court denied the motion, concluding that Hutson was not entitled to assert a defense under RFRA because his beliefs were not religious in nature. *United States v. Hutson*, No. 16-CR-00186-MSK-GPG, 2018 WL 345316, at *5 (D. Colo. Jan. 10, 2018).

At the jury instruction conference, defense counsel stipulated that Hutson's submissions were claims within the meaning of the FCA and confirmed that "the only element [he was] contesting . . . [was] the knowledge and the intent." R., Vol. 3 at 1146. Consistent with that defense strategy, counsel agreed with the court's proposal to give the following instruction regarding the "claim" element of the offense:

> The parties have agreed that Mr. Hutson made the claims on the United States as alleged in [the FCA counts] of the Indictment. I further instruct you that they agree that those claims were false or fictitious because they had no valid basis in law. Thus, the only issue you will have to determine for purposes of these counts is whether Mr. Hutson knew that the claims were false or fraudulent at the time he submitted them.

*Id*. at 1186 (reading of instruction to jury); *see also id.* at 1146-48 (agreement to instruction). In light of Hutson's stipulation that the "claims" element of the offense was satisfied, counsel also agreed with the court's proposal to include only the mens rea element of the offense in the elemental instruction:

3

To prove each of the [FCA counts], the Government must establish the following element beyond a reasonable doubt: That Mr. Hutson knew at the time he made the claim that the claim was false or fraudulent. That is, that it had no valid legal basis.

*Id*. at 1187. And, with no objection from the defense, the court then gave the following mens rea instruction:

In determining whether Mr. Hutson knew that a claim was false, you are instructed that a person knows or knew a claim is false or fraudulent when that person acts voluntarily and intentionally, with an awareness that the claim is false or fraudulent. A person who is aware of a high probability that a claim might be false or fraudulent and who deliberately avoids obtaining more information to clarify the situation can be said to know that the claim is false or fraudulent. On the other hand, a person who actually believes, due to mistake or accident, that a claim is genuine, even if it is not, cannot be said to know that the claim is false or fraudulent.

*Id*.

On appeal, Hutson challenges his convictions on the grounds that (1) his conduct was political speech protected by the First Amendment; (2) the FCA is unconstitutionally vague because it does not define "claim"; and (3) the jury instructions the district court gave were flawed because they did not define "claim" or include specific intent as an element of the offense. His arguments fail; the district judge did not err.

## Analysis

### 1. First Amendment Claim

In his pre-trial motion to dismiss, Hutson argued that his submissions were protected under the First Amendment because they were an expression of his belief that the federal government is liable for its citizens' private debts. After the district

4

court denied that motion, this court, in another case, rejected the precise argument Hutson raised in that motion and held that conduct nearly identical to his was not protected under the First Amendment. *United States v. Glaub*, 910 F.3d 1334, 1338 (10th Cir. 2018) (explaining that because "speech is not protected by the First Amendment when it is the very vehicle of the crime itself," the defendant's speech is not protected "if, by sending his private bills to the USDA, he knowingly filed a false claim in violation of § 287" (internal quotation marks omitted)).

Because *Glaub* is dispositive of the argument Hutson raised below, he recast his First Amendment claim on appeal, maintaining that his submissions were constitutionally protected speech because they were a form of "[p]olitical expression, hyperbole, and rhetoric that [could not] be taken seriously by any objectively reasonable government employee." Aplt. Br. at 6; *see also id*. at 8, 19. As he puts it, his new argument focuses not on his intent but "on the effect of the speech on the listener." Reply. Br. at 3-4. *See Glaub*, 910 F.3d at 1338 (noting that the argument that the defendant's submissions were constitutionally protected because they were based on his belief that the government was liable for his debts "hinge[s] on the factual question of intent").

But by focusing on how the government might have interpreted his requests for payment instead of on his intent in submitting them, Hutson's new argument attempts to resurrect a challenge he abandoned before trial—that the submissions were not "claims" within the meaning of § 287. Indeed, he recognized in his opening brief that, at base, his new First Amendment argument is that "no reasonable

5

government employee would consider [his submissions] 'claims' for purposes of the [FCA]." Aplt. Br. at 8. This argument is fundamentally inconsistent with his stipulation that his submissions were claims and his agreement that the only issue for the jury to decide was whether he knew they were false when he submitted them. Having "intentionally abandoned" a defense at trial based on the "claims" element of the offense, Hutson waived any appellate arguments challenging whether his submissions were claims.[3] *See United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1181-85 (10th Cir. 2009) (explaining that "[w]aiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it," and holding that by stipulating one element of the charge was satisfied and agreeing to instructions telling the jury to "consider [that element] proven" and to decide only whether the other element was satisfied, defendant waived appellate arguments regarding the element that was the subject of the stipulation).

Nevertheless, we note that the Supreme Court mandated that the predecessor to the FCA be construed broadly and recognized the term "claims" in a provision using

---

[3] Conflating law of the case, preservation, and waiver principles, Hutson maintains that after the district court denied his motion to dismiss and rejected (albeit without explanation) the First Amendment argument he made in that motion, its ruling became the law of the case and he was not required to raise the issue again to preserve it for appeal. This argument ignores the fact that the First Amendment argument he raised on appeal is not the same as the one he raised below. In any event, his subsequent stipulation and instructional concessions waived any arguments on appeal regarding the "claims" element, despite his having challenged it in a previous motion. *See Cruz-Rodriguez*, 570 F.3d at 1186 (rejecting similar argument, explaining "[p]arties are free to adjust their litigation strategy in light of a trial court's rulings" but an appellate court "will not relieve them of the consequences of such litigation choices," including waiver).

6

language similar to that in § 287 "reaches beyond claims which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) (internal quotation marks omitted). Thus, as we recognized in *Glaub*, a claim is fraudulent under § 287 if it was fraudulent when made and the defendant knew it was fraudulent when he made it; there is no requirement that the government "prove an actual risk of loss." 910 F.3d at 1339; *see also id*. at 1338 (rejecting defendant's First Amendment argument that his claim was not fraudulent because there was no evidence of "how his speech could be considered fraudulent" (internal quotation marks omitted)); Tenth Circuit Pattern Jury Instruction Criminal No. 2.18 (2018) (specifying that to prove an FCA violation "[i]t is not necessary to show that the government . . . was in fact deceived or misled").[4]

## 2. Void-for-Vagueness

Hutson next claims § 287 is unconstitutionally vague both on its face and as applied to him because it does not define "claim" and therefore has the potential of criminalizing constitutionally protected speech.

---

[4] The cases Hutson cited in support of his new argument are defamation cases that address whether the defendants' statements were factual. *See, e.g.*, *Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010); *Pring v. Penthouse Int'l, Ltd*., 695 F.2d 438, 440 (10th Cir. 1982). In the defamation context, a reasonable person's interpretation of the challenged speech is relevant, *see, e.g.*, *Mink*, 613 F.3d at 1009; *Pring*, 695 F.2d at 440, but Hutson cited no cases, and we are aware of none, suggesting that it is relevant in the context of a criminal prosecution under § 287.

He arguably waived this argument by stipulating that his conduct constituted a "claim" within the meaning of § 287, *see United States v. Ochoa-Colchado*, 521 F.3d 1292, 1298-99 (10th Cir. 2008) (concluding that defendant waived void for vagueness challenge to statute by pleading guilty), and by failing to raise the issue in the district court and not arguing plain error in his opening brief, *see United States v. Wright*, 848 F.3d 1274, 1281 (10th Cir. 2017) (declining to consider argument raised for the first time on appeal where defendant did not argue for plain error review). But Hutson did argue plain error in his reply brief, and there is an open question in this circuit as to whether an appellant can preserve an issue for plain-error review by arguing plain error in a reply brief rather than an opening brief. *See United States v. MacKay*, 715 F.3d 807, 831-32 & n.17 (10th Cir. 2013). As in *MacKay*, however, we need not resolve the preservation issue here because Hutson cannot meet the plain error standard.

In *Glaub,* we rejected an overbreadth argument similar to Hutson's void-for-vagueness argument because it was tethered to the defendant's failed First Amendment arguments. 910 F.3d at 1340; *see Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (noting that the Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines"). In light of both *Glaub* and his stipulation that his submissions were claims under the FCA, Hutson cannot show that his convictions constitute plain error based on the statute's failure to define "claim." *See United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir. 2008) ("Under the plain error standard, we reverse only when an error impacts a party's

substantial rights, asking whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different" (internal quotation marks omitted)).

### 3. Instructional Challenges

Hutson's last two claims attack the jury instructions for failing to define "claim" and to include specific intent as an element of the offense.

### a. Definition of "Claim"

Hutson maintains that, because § 287 does not define "claim," the court should have given an instruction adopting the definition in 31 U.S.C. § 3729(b)(2), which applies to civil False Claims Act violations. But he waived this argument by stipulating that his submissions were claims within the meaning of the statute and agreeing that the jury should be instructed to not consider that issue and to decide only whether he knew they were false or fraudulent when he submitted them. *See Cruz-Rodriguez*, 570 F.3d at 1184-85. Accordingly, we do not address this argument.

### b. Mens Rea Instruction

Hutson's final contention is that, because his conduct was based on his sincere belief that the government is responsible for his personal debts and that belief negates specific intent, the district court reversibly erred by not including specific intent in the elemental jury instruction.

Hutson did not object to the instruction the district court gave or argue that it should include specific intent as an element of the offense. Accordingly, we apply a

9

plain error standard on review. *United States v. Sorensen*, 801 F.3d 1217, 1238 (10th Cir. 2015). To prevail under that standard, Hutson must show "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *United States v. Ramos-Arenas*, 596 F.3d 783, 786 (10th Cir. 2010) (internal quotation marks omitted).

Hutson acknowledges that under this circuit's precedent, a conviction under § 287 does not require proof of specific intent. *See United States v. Irwin*, 654 F.2d 671, 681-82 (10th Cir. 1981).[5] Nevertheless, based on authority from other circuits, he claims the district court's failure to give a specific intent instruction here was plain error. We disagree and conclude that the district court did not commit error—plain or otherwise—in instructing the jury consistent with *Irwin* and the pattern jury instruction. *See Ramos-Arenas*, 596 F.3d at 787 (finding no plain error where the level of intent required was an open question in this circuit and instruction given tracked pattern jury instruction and was consistent with law in majority of circuits).

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[5] *Irwin* was overruled on other grounds by *United States v. Daily*, 921 F.2d 994 (10th Cir. 1990), but *Daily* was overruled by *United States v. Wiles*, 102 F.3d 1043 (10th Cir. 1996), on the same issue that *Daily* overruled *Irwin*.