**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARMANDO CERVANTES,

    Defendant - Appellant.

No. 20-8046

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:10-CR-00119-NDF-22)**
_____

Thomas A. Fleener, Fleener Petersen, LLC, Laramie, Wyoming, for Defendant–Appellant.

Thomas Szott, Assistant United States Attorney (L. Robert Murray, Acting United States Attorney, with him on the brief), Cheyenne, Wyoming, for Plaintiff–Appellee.
_____

Before **HOLMES**, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Between August 2010 and January 2011, Defendant Armando Cervantes prepared for trial on two charges: (1) conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A); and (2) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C). On the eve of trial, defense counsel filed a last-minute motion to continue premised on a breakdown of communication. The district court denied the motion and commenced with jury selection. After jury selection but before opening statements, Defendant absconded. The district court proceeded with trial in Defendant's absence, and the jury returned a guilty verdict on both counts. Nine years later, Defendant was apprehended and sentenced. This appeal followed. Defendant argues the district court abused its discretion in (1) denying his motion to continue and (2) trying him *in absentia*. We disagree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On May 20, 2010, a grand jury charged Defendant Armando Cervantes with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). In August 2010, Defendant made his initial appearance. The court appointed Ms. Cindi Wood as defense counsel, and Defendant pled not guilty to both counts. Thereafter, the district court released Defendant on bail and set trial to begin on January 4, 2011.

Two weeks before trial, on December 21, 2010, Defendant attempted to retain private, out-of-state defense counsel. Although Defendant paid private counsel a $5,000 retainer, counsel did not speak with Ms. Wood, enter an appearance, or otherwise inform the court of their intent to represent Defendant. As such, Ms. Wood continued to operate under the assumption that she represented Defendant. On

2

January 3, 2011, the day before trial, private counsel finally contacted Ms. Wood. The same day, Defendant told Ms. Wood that he hired private counsel in December.

Equipped with this new information, Ms. Wood filed a motion to withdraw and continue the trial. The court conducted a telephonic hearing during which Ms. Wood told the court that, before hearing from private counsel, she had been under the impression that they "were prepared and ready to go forward." The court denied the motion, noting that the jurors were already braving winter weather to travel to the courthouse. The court also emphasized that it had not authorized representation by out-of-state counsel, who had yet to file any motions to appear pro hac vice. The court cautioned Ms. Wood that it may hold Defendant's trial *in absentia* if he failed to appear.

On the morning of January 4, 2011, the Government and Defendant appeared as anticipated. At that time, the court conducted a second hearing related to Defendant's request for new counsel. Defendant asked the court for time to retain new counsel, and Ms. Wood renewed her motion for a continuance. The court again denied the motion but afforded Ms. Wood one additional day to prepare for trial.

Before recessing for the day, and while Defendant was physically present in the courtroom, the court conducted jury selection as scheduled. The court informed the jury that opening statements would not occur until January 6, 2011, and the jury was sworn. The court told Defendant that it would hear argument on his motion to exclude evidence the following afternoon, and while his presence was not required at that hearing, he must appear at 8:15 a.m. on January 6, 2011, for opening statements.

3

On January 5, 2011, the court held the hearing on Defendant's motion to exclude evidence. Defendant was not present for that hearing. When it was time for opening statements the following morning, Defendant was nowhere to be found. In light of his absence, the district court issued a warrant for Defendant's arrest and continued the trial until January 31, 2011. The court indicated that it would consider whether to try Defendant *in absentia* in the meantime.

On January 25, 2011, the court conducted a status conference, during which Ms. Wood objected to holding the trial without Defendant's presence. The court then scheduled an evidentiary hearing for January 31, 2011, to determine whether Defendant voluntarily absconded from trial. At the evidentiary hearing, a United States Marshal testified that Defendant had fled to Mexico and was living there in his father's house. The marshal corroborated this conclusion with statements from Defendant's former girlfriends, who told law enforcement that Defendant had left for Mexico and would not soon return. At the conclusion of the hearing, the court decided to proceed with trial *in absentia*. Trial resumed between February 1 and February 4, 2011, and the jury convicted Defendant on both counts.

Nine years later, Defendant was apprehended in Utah. On July 27, 2020, the district court sentenced Defendant to 188 months' imprisonment followed by 5 years of supervised release on both counts, to run concurrently. This appeal followed.

4

II.

We turn first to Defendant's claim that the district court abused its discretion in denying his motion to continue. Defendant argues that the denial of the motion deprived his counsel of adequate time to prepare for trial.[1] We review the denial of a motion to continue for an abuse of discretion and will reverse only if the court's ruling was "arbitrary or unreasonable and materially prejudiced the defendant." *United States v. Glaub*, 910 F.3d 1334, 1344–45 (10th Cir. 2018) (quoting *United States v. McKneely*, 69 F.3d 1067, 1076–77 (10th Cir. 1995)).

Defendant asks us to apply the five-factor test employed in *United States v. La Monte*, 684 F.2d 672 (10th Cir. 1982). *La Monte*, however, applies to Sixth Amendment ineffective assistance of counsel claims. *See id.* at 673–74. As already stated, *see supra* note 1, Defendant expressly disavowed any Sixth Amendment ineffective assistance of counsel claim during oral argument. And for good reason. "Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *Galloway*, 56 F.3d at 1240.

---

[1] In his briefing, Defendant seems to conflate a Sixth Amendment ineffective assistance of counsel claim with his claim that the district court erred in denying his motion to continue. It is well established in this circuit that ineffective assistance of counsel claims should generally be brought in collateral proceedings, and those brought on direct appeal are "presumptively dismissible." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). Recognizing as much during oral argument, defense counsel expressly disavowed any Sixth Amendment ineffective assistance of counsel claim. We therefore do not address any Sixth Amendment claim and instead apply our standard for reviewing the denial of a motion to continue.

5

Rather than directing us to the correct test, the Government responds that *La Monte* was partially overruled by *United States v. Cronic*, 466 U.S. 648 (1984). While the Government is correct, neither *Cronic* nor *La Monte* have any bearing on whether the district court abused its discretion by denying Defendant a continuance.

To answer that question, we examine: "(1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial." *Glaub*, 910 F.3d at 1345. Neither Defendant nor the Government address this framework in their briefing. Nonetheless, considering these factors, Defendant has not shown the district court abused its discretion when it denied his motion to continue.

We first consider whether Defendant diligently sought the continuance. Defense counsel filed the motion to continue the day before trial and renewed it on the morning of trial. The motion was premised on the fact that Defendant had retained private counsel and had stopped communicating with court-appointed counsel. Ms. Wood indicated she had been unable to review recently disclosed discovery with Defendant and had also been unable to discuss two alternative theories of defense with him.

Diligence with respect to this request is lacking. Although Defendant may be blameless for private counsels' failure to enter an appearance, Defendant waited more than four months after his arraignment to seek out private representation, just

two short weeks before trial. Defendant also is partly to blame for the alleged breakdown of communication because he failed to inform Ms. Wood that he had retained private counsel.

More importantly, Ms. Wood did not file the motion to continue until the day before trial, even though she had acted as Defendant's counsel since August 2010, and their communication allegedly broke down in December 2010. While the request was made immediately after private counsel contacted her, the appearance of private counsel does not excuse Ms. Wood's two-week delay (from the time communication allegedly broke down) in filing the motion to continue. *See United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (concluding that the appearance of a second attorney does not excuse the original attorney's tardiness in requesting a continuance). The first factor, then, supports the district court's denial of the motion to continue.

Next, we consider whether granting the continuance would have accomplished its stated purposes. Again, Ms. Wood contended that she needed additional time to review recently disclosed evidence with Defendant. She also advised the district court that she needed more time to discuss two alternative theories of defense with Defendant, one which would have required him to testify. A continuance, if granted, would have allowed Ms. Wood the opportunity to resolve these issues. Thus, this factor favors Defendant.

Turning to the inconvenience to the Government, the court, and witnesses, "any continuance granted practically on the eve of trial inevitably will disrupt the

7

schedules of the court, the opposing party, and the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend the trial." *Rivera*, 900 F.2d at 1475. This universal burden would have been compounded in this case. Because the presiding district court judge was preparing to retire later that year, the court's calendar was unusually full, making it a challenge to reschedule Defendant's case. If the judge was unable to reschedule Defendant's case before his retirement, the case would have necessarily been left to a different judge, creating an additional burden on the court. Accordingly, continuing the trial would have resulted in a substantial burden to the Government, the court, and witnesses.

Finally, we turn to the need for the continuance and any resulting harm. The fourth factor asks whether the decision to deny the continuance materially prejudiced the defendant. *Id.* at 1476. This is "by far the most important factor to consider" in determining whether reversal is warranted. *Id.* (alterations omitted) (quoting *United States v. West*, 828 F.2d 1468, 1471 (10th Cir. 1987)).

Here, Defendant does not argue that Ms. Wood's performance was deficient or that the denial of his motion to continue materially prejudiced him. Nor does the record support such a conclusion. For starters, Ms. Wood indicated she was "prepared and ready to go forward" the day before trial, which cuts against the notion that her performance would have been different had the continuance been granted. In addition, when the district court denied the motion to continue, it partially accommodated Ms. Wood's request by giving her one more day to prepare for trial. *See id.* at 1476 (explaining that any prejudice resulting from the denial of the

8

continuance was mitigated by the court's decision to recess at the close of the Government's case-in-chief, allowing the defendant an additional weekend to prepare his defense). During this time, Ms. Wood could have reviewed the newly disclosed evidence and discussed the two alternative theories of defense with Defendant. Ms. Wood herself confirmed that she was hopeful an additional day would be sufficient to "straighten out the concerns so that [Defendant could] have the defense that he is certainly entitled to." Accordingly, the fourth factor supports the district court's denial of the motion to continue.

In sum, granting the motion to continue would have accomplished its stated purpose, but (1) Defendant was not diligent in seeking a continuance, (2) the inconvenience resulting from a continuance would have been substantial, and (3) Defendant was not prejudiced by denial of the motion. For these reasons, we conclude the district court did not abuse its discretion in denying a continuance.

### III.

We next address whether the district court abused its discretion in trying Defendant *in absentia*. We review the court's decision for an abuse of discretion. *United States v. Edmonson*, 962 F.2d 1535, 1544 (10th Cir. 1992).

"A defendant who was initially present at trial . . . waives the right to be present . . . when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain during trial." Fed. R. Crim. P. 43(c)(1)(A). Before trying a defendant *in absentia*, then, the district court must find that (1) the defendant was "initially present at trial"

9

and (2) subsequently waived his right to be present. *Id.* If these threshold matters are satisfied, the court must decide whether the public interest favors proceeding in the defendant's absence. *See Edmonson*, 962 F.2d at 1544; *see also United States v. Yannai*, 791 F.3d 226, 240 (2d Cir. 2015).

Our analysis begins with the question of whether Defendant was "initially present at trial." *See* Fed. R. Crim. P. 43(c)(1)(A); *Crosby v. United States*, 506 U.S. 255, 262 (1993). Both parties agree that he was. Therefore, we turn to whether Defendant voluntarily waived his right to be present for the remainder of the trial.

Before concluding that Defendant voluntarily absconded from trial, the court continued the trial for nearly a month to allow time for an investigation into Defendant's whereabouts. On January 31, 2011, the court held an evidentiary hearing during which a United States Marshal testified that Defendant had fled to Mexico. The marshal explained that Defendant was living there in his father's house with his current girlfriend and youngest child. The marshal further testified that Defendant's former girlfriends told law enforcement that Defendant had left for Mexico and wouldn't be returning to the United States anytime soon. Defense counsel could not point to any evidence that Defendant's flight was involuntary. Based on the evidence presented, the district court found Defendant's absence was voluntary. We agree. All evidence points to the conclusion that Defendant voluntarily fled the United States to avoid trial, and the district court did not abuse its discretion in so finding.

Finally, we turn to whether the public interest outweighed Defendant's right to be present at his trial. In conducting this balancing test, district courts consider various factors, such as "the likelihood that the trial could soon proceed with the defendant present, the difficulty of rescheduling, and the burden on the Government." *Edmonson*, 962 F.2d at 1544 (internal citations omitted). Although we have suggested the balance will generally favor proceeding without the defendant only in multidefendant trials, *see id.*, this is not a bright line rule. Rather, whether the trial involves a single defendant or several is but one consideration for the court. *See United States v. Bradford*, 237 F.3d 1306, 1313–14 (11th Cir. 2001) (rejecting the idea that a trial *in absentia* is only appropriate in multi-defendant cases); *United States v. Nichols*, 56 F.3d 403, 417–18 (2d Cir. 1995) ("[A] district court has 'broad discretion' to proceed with trial even in single-defendant cases"); *see also United States v. Hellems*, 866 F.3d 856, 865 (8th Cir. 2017) (permitting a single-defendant trial *in absentia*); *United States v. Guyon*, 27 F.3d 723, 728 (1st Cir. 1994) (same).

Here, the district court carefully considered the public interest before deciding to proceed in Defendant's absence. First, the court explained that it was unlikely Defendant would soon be present for trial. Because Defendant is a dual citizen of the United States and Mexico, his return could only be accomplished through extradition, which the court estimated would take more than a year. Second, given the circumstances, rescheduling the trial would have imposed a substantial burden on the court. Because of the presiding judge's looming retirement, the district court explained that if it waited for Defendant to return to the United States, the case would

11

likely have to be tried in front of a new judge. In addition, even if Defendant was to return to the United States sooner than expected, the judge's ability to reschedule the trial was constrained because his calendar was unusually full through his retirement. Third, the district court acknowledged a significant public expense. The court had spent over $18,000 to empanel the jury, and to forgo trial would waste that money, as the court would have to empanel a new jury when trial was ready to resume. Finally, the district court explained that the Government would be prejudiced if forced to wait for Defendant's return. The Government was prepared for trial and had expended resources to keep witnesses in the area up to that point. A continuance would waste those resources. Balancing these considerations, the court found the public's interest in completing the trial "clearly outweigh[ed]" Defendant's interest in being present.

The district court did not abuse its discretion in concluding the public interest outweighed Defendant's right to be present. To be sure, a defendant's right to be present cannot "cursorily, and without inquiry, be deemed by the trial court to have been waived." *Edmonson*, 962 F.2d at 1535 (quoting *United States v. Wright*, 932 F.2d 868, 879 (10th Cir. 1991)). But each of the above-mentioned considerations strongly support the public interest in completing the trial. Weighed against Defendant's willful choice to avoid trial, we cannot say the district court abused its discretion in proceeding *in absentia*. Indeed, "there is an inherent public interest in preventing contumacious defendants from dictating the conduct of their trials." *Nichols*, 56 F.3d at 418.

12

IV.

For the reasons provided herein, the district court did not abuse its discretion in denying Defendant's motion to continue or in trying Defendant *in absentia*. We AFFIRM.